IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 21, 2004 Session

## DORIAN SORIANO BAUTISTA v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 9077     Lee Russell, Judge**

_____

**No. M2002-01707-CCA-R3-PC - Filed September 21, 2004**
_____

The petitioner, Dorian Soriano Bautista, appeals from the Bedford County Circuit Court's dismissal of his petition for post-conviction relief from his conviction for theft over one thousand dollars, a Class D felony.  He contends that he received the ineffective assistance of counsel because his attorneys failed to explain to him the adverse consequences that his guilty plea and conviction could have on his resident alien status, which led to his deportation.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

S. Jason Whatley, Columbia, Tennessee, for the appellant, Dorian Soriano Bautista.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Senior Counsel; William Michael McCown, District Attorney General; and Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arises from the petitioner's theft of a car wheel and tires.  On June 14, 2001, the petitioner pled guilty and the state summarized the evidence against the petitioner as follows:

> Your Honor, the State's proof would show that on March the 3rd of this year a civilian or citizen witness basically saw the defendant stealing wheels off a car at the Clarence Lamb Car Lot.  And apparently when the defendant sort of realized he was being watched, he took off, went across to Kroger's across the street through the parking lot there.  Kind of kept up with him [sic].  The police were contacted, and stopped him just a short distance nearby.  And he was

in a truck. And the stolen wheel and tires were in the back. So, basically caught in the act.

The trial court, after receiving the state's proffer, informed the petitioner of his constitutional right (1) to a jury trial, (2) to force the state to prove every element of the crime beyond a reasonable doubt, (3) to confront and cross-examine witnesses called against him, (4) to remain silent or to testify at trial, (5) to have the assistance of counsel, (6) to call witnesses on his own behalf, and (7) to have the court issue subpoenas compelling the attendance of witnesses. The trial court then informed the petitioner that if he were convicted by a jury, he would have the right to a sentencing hearing and to appeal his conviction. The trial court explained to the petitioner that the crime for which he had been charged carried with it a potential sentence of two to twelve years. The trial court asked the petitioner whether he was under the influence of any intoxicant, and when the petitioner replied that he was not, the following exchange occurred:

> THE COURT: Okay. Mr. Bautista . . . [did] anybody promise you anything to get you to take the deal?
> [THE PETITIONER]: No, sir.
> THE COURT: Anybody threaten you in any way to get you to take the deal?
> [THE PETITIONER]: No, sir.
> THE COURT: Okay. As far as you are concerned, was the plea bargain arrangement free and voluntary?
> [THE PETITIONER]: Yes, sir.

The trial court found that the petitioner's guilty plea was knowing and voluntary, and it accepted the petitioner's plea. At the sentencing hearing, the trial court imposed a sentence of two years and one month, which it suspended, placing the petitioner on probation. As the petitioner was leaving the courthouse, an agent of the Immigration and Naturalization Service (INS) arrested him and charged him with being subject to removal from the United States pursuant to federal law for having been convicted of "an aggravated felony" as defined in the Immigration and Nationality Act. The INS thereafter transported the petitioner to the Oakdale Federal Detention Center in Louisiana to await deportation proceedings.

The petitioner sought post-conviction relief, claiming that he received the ineffective assistance of counsel which prevented him from entering a knowing and voluntary guilty plea. Specifically, the petitioner alleged his court appointed counsel failed to inform him of the effect his guilty plea would have on his resident alien status. The petitioner alleged that had he known of such adverse consequences, he would have proceeded to trial.

The petitioner was unable to attend the post-conviction hearing in this matter because he was detained in Louisiana awaiting deportation, but the petitioner's post-conviction counsel and an assistant district attorney general took his deposition by telephone. The deposition was introduced as evidence at the petitioner's post-conviction hearing. A transcript of the deposition was included

in the record, but a transcript of the remainder of the hearing is absent. We note that the court reporter failed to produce the post-conviction hearing transcript and was subsequently found in contempt of court and incarcerated. However, the petitioner's post-conviction counsel and the district attorney general's office filed an agreed "statement of the evidence." See T.R.A.P. 24(c).

The petitioner testified that he is a permanent resident alien residing in the United States since 1993, that he graduated from Shelbyville Central High School where he learned to speak fluent English, and that he was intending upon applying for United States citizenship. Regarding the charges against him in Bedford County, he said that in return for his guilty plea to theft over one thousand dollars, the state had dropped misdemeanor charges against him for weapon possession and criminal trespass.

The petitioner testified that his public defenders, who he characterized as a "blonde man with glasses" and a woman, never told him that he could be deported to Mexico based upon his guilty plea to theft over one thousand dollars. He said that he was unaware whether the charges against him were misdemeanors or felonies but he knew that some were more serious than others. He said that on the day of the guilty plea, he was taken into custody for failure to comply with a court order to pay fees to his court-appointed lawyers. He said that while he was in detention, a male public defender told him his only options were to plead guilty and get probation or to go to trial and serve two years and one month in the Department of Correction. He said neither of his court-appointed attorneys discussed the possibility of pretrial or judicial diversion with him prior to his guilty plea. He said that had he known pleading guilty to the theft charge would have resulted in his deportation, he would never have agreed to the plea bargain. He said he would have instead proceeded to trial in order to contest the state's proof regarding the value of the stolen property.

An Assistant Public Defender met with him on two occasions: at the petitioner's arraignment and at the public defender's office. He said he discussed with the petitioner the state's response to the petitioner's discovery request, and he said they discussed the petitioner's version of the events. He said that he also discussed with the petitioner the nature of the charges against him and the punishment he could receive. He said that during the discussion of punishment, the petitioner admitted his guilt and told him he was only concerned with avoiding incarceration. The attorney said that although he was not physically present on the date of the plea hearing, he had conducted the plea negotiations with the state. He said the agreement with the state provided that the petitioner would be placed on probation if the presentence report was favorable. He acknowledged he was aware of the petitioner's status as a resident alien during the plea negotiation process.

The District Public Defender testified that she represented the petitioner at his plea hearing on June 14, 2001. She said she had familiarized herself with the petitioner's case by discussing it with co-counsel before the hearing. She said he told her of the plea agreement reached with the state. She said she met with the petitioner before the hearing and reviewed the plea agreement paperwork with him. She said that at that time, she asked the petitioner if he had any questions and that his only concern was avoiding incarceration. She said the petitioner did not ask her about potential

deportation issues. She testified that she was also aware of the petitioner's immigration status before the entry of his guilty plea.

After reading the petitioner's deposition and listening to the testimony of the witnesses at the post-conviction hearing, the trial court dismissed the petition for post-conviction relief because it found that the petitioner perjured himself and because the petitioner's claims of ineffective assistance of counsel were based only upon a failure of appointed counsel to inform him of a collateral consequence of his guilty plea. The trial court held that the failure did not violate the petitioner's right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution.

The petitioner contends that the trial court erred in denying his petition for post-conviction relief because of the failure of counsel to inform him that his guilty plea to theft over one thousand dollars could result in his deportation to Mexico. The issue on appeal is whether such a failure is a violation of the right to the effective assistance of counsel under the Sixth Amendment. In support of his argument, which he alleges constitutes one of first impression in Tennessee, the petitioner cites as persuasive authority numerous cases from other jurisdictions holding that such a failure constitutes the ineffective assistance of counsel because of the drastic and punitive nature of deportation. The state claims that an attorney's failure to inform a client of potential issues involving deportation is a collateral issue, and as such, it does not constitute the ineffective assistance of counsel. In support of this argument, the state's brief is replete with quotes, cites, and analysis from what it claims is a 1995 Tennessee Supreme Court case but is in fact a 1994 Tennessee Court of Criminal Appeals case. See Adkins v. State, 911 S.W.2d 334 (Tenn. Crim. App. 1994). Although the state concludes its argument by pointing out that "this court is simply not authorized to find in petitioner's favor," we note that the Adkins language relied on by the state was dicta. See id. at 350-51. However, for reasons which we address below, we agree with the state and affirm the trial court's dismissal of the petition for post-conviction relief.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2003). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 691. When a petitioner pleads guilty, he must

show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Adkins, 911 S.W.2d at 349.

When the petitioner's claim is one of inadequate advice, courts generally distinguish between failure to inform of direct and indirect consequences of a guilty plea. Failure by counsel to inform of direct consequences of a guilty plea may constitute ineffective assistance of counsel. On the other hand, failure to inform of indirect consequences of a guilty plea normally does not. Adkins, 911 S.W.2d at 350. This distinction "turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Id. (quoting Torrey v. Estelle, 842 F.2d 234, 236 (9th Cir. 1988)).

In Adkins, this court stated,

> Any failure of counsel to advise as to any collateral consequences of a plea does not, under these authorities, fall below the range of competence demanded of attorneys in criminal cases. Misadvice on the issue might have warranted relief; and, while a fine distinction, silence by counsel does not. In short, a sin of commission might merit relief while the sin of omission does not.

911 S.W.2d at 350. One of the authorities the court cited as an example of a collateral consequence was United States v. Del Rosario, 902 F.2d 55, 59 (D.C. Cir. 1990). The Del Rosario court held that "trial counsel's failure to advise a defendant of the collateral consequence of a plea of guilty affecting the possibility of the deportation of the defendant[] does not fall short of the 'objective standard of reasonableness,' . . . under Strickland." 902 F.2d at 59.

The petitioner urges this court to hold that failure to inform a defendant of the potential consequences of deportation constitutes ineffective assistance of counsel and cites cases from Illinois and Pennsylvania as representative of a modern trend. See People v. Correa, 485 N.E.2d 307 (Ill. App. Ct. 1985); Commonwealth v. Wellington, 451 A.2d 223 (Pa. Super. Ct. 1982). In Correa, the court held the defendant received ineffective assistance of counsel because he specifically asked his counsel about potential deportation consequences and received erroneous advice. However, in People v. Huante, 571 N.E.2d 736 (Ill. 1991), the Illinois Supreme Court distinguished the Correa decision and held that "the passive conduct of counsel in failing to discuss with a defendant the collateral consequences of a guilty plea" did not constitute the ineffective assistance of counsel. 571 N.E.2d at 739.

In Wellington, the court held the failure to advise a defendant that a conviction could render her subject to deportation constituted ineffective assistance of counsel. 451 A.2d at 225. However, the Pennsylvania Supreme Court disapproved of this holding in Commonwealth v. Frometa, 555 A.2d 92, 94 n.2 (Pa. 1989). In so doing, the court noted that its decision was

in line with a majority of state and federal courts.  See, Tafoya v. State, 500 P.2d 247 (Alaska 1972) cert. den. 410 U.S. 945, 93 S. Ct. 1389 (failure to inform an alien defendant of the possibility of deportation does not constitute ineffective assistance); State v. Malik, 37 Wash.App. 414, 680 P.2d 770 (1984) (it is not incumbant upon defense counsel to explain the collateral consequence of deportation to criminal defendant); State v. Chung, 210 N.J.Super. 427, 510 A.2d 72 (1986) (defense counsel need only advise a criminal defendant of the direct consequences of pleading guilty); State v. Ginebra, 511 So.2d 960 (Fla.1987) (failure of counsel to inform of the collateral consequences of deportation does not undermine guilty plea); Mott v. State, 407 N.W.2d 581 (Iowa 1987) (failure to advise a criminal defendant of the collateral consequences, even "serious ones" like deportation can not be the basis of an ineffectiveness claim); State v. Santos, 136 Wis.2d 528, 401 N.W.2d 856 (1987) (knowledge of the collateral consequences is not a prerequisite to a knowing and intelligent plea).  See also, United States v. Santelises, 476 F.2d 787 (2d Cir.1973); United States v. Romero-Vilca, 850 F.2d 177 (3d Cir.1988); United States v. Campbell, 778 F.2d 764 (11th Cir.1985); LaPorta v. United States, 651 F. Supp. 884 (E.D. Pa.1986). See generally, 65 A.L.R. 4th 719 (1988).

We agree with the decisions of the Illinois and Pennsylvania Supreme Courts and hold that failure to inform a defendant of potential consequences of deportation does not constitute ineffective assistance of counsel under Strickland because it has no definite, immediate, and largely automatic effect on the range of the defendant's punishment.  We decline at this time to address the question posed to the court in Correa concerning erroneous advice in the deportation context, except to note that this court has distinguished between erroneous advice and failure to inform.  See Adkins, 911 S.W.2d at 350.

In the present case, the record reflects that neither of the petitioner's attorneys advised him concerning potential deportation issues, and it also indicates they did not misinform him.  Although they were both aware of the fact that the petitioner was a resident alien, they failed to discuss potential deportation issues with him.  Based upon the foregoing authorities, we hold that the failure to discuss with the petitioner potential deportation ramifications from his conviction did not render their performance as the petitioner's counsel deficient.  We affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE