IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 21, 2010 Session

## GERARDO GOMEZ v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 94604     Mary Beth Leibowitz, Judge**

_____

**No. E2010-01319-CCA-R3-PC - Filed May 12, 2011**

_____

The Petitioner, Gerardo Gomez, appeals as of right from the Knox County Criminal Court's summary denial of his petition for post-conviction relief. In 1997, the Petitioner pled guilty to possession with intent to sell not less than 10 pounds nor more than 70 pounds of marijuana, a Class D felony, and received a sentence of 24 months, suspended to probation. As a result of his conviction, the Petitioner, who had been granted legal permanent residency status in 1990, was removed from the United States. The Petitioner then illegally re-entered the United States and was arrested. The Petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective for failing to advise him of the deportation consequences of pleading guilty. The post-conviction court summarily dismissed the petition, concluding that the petition was untimely. On appeal, the Petitioner contends that his claim is based on a constitutional right that did not exist at the time he pled guilty and that he is entitled to post-conviction relief from this court. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Grace I. Gardiner, Knoxville, Tennessee, for the appellant, Gerardo Gomez.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; and Randall Eugene Nichols, District Attorney General, for the appellee, State of Tennessee.

### OPINION

On April 23, 2010, the Petitioner filed a petition for post-conviction relief relative to his 1997 conviction and sentence, asserting that his guilty plea was involuntarily entered as

a result of trial counsel's ineffectiveness. The Petitioner did not set forth any grounds as to why the time for the filing of his post-conviction petition should be tolled but asserted that "trial counsel failed to correctly advise [him] about the deportation consequences of entering a guilty plea." On May 10, 2010, the post-conviction court summarily dismissed the petition, concluding that the petition was untimely. On June 14, 2010, the Petitioner filed a notice of appeal, more than 30 days after the order appealed from was filed.[1] While the State initially argued on appeal that this case should be dismissed because the notice of appeal was untimely, the State agreed to a waiver of the timely filing of the notice of appeal during oral arguments. Indeed, Rule 4(a) states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." We choose to waive the timely filing of the notice of appeal.

ANALYSIS

The Petitioner contends that the post-conviction court's summary dismissal of his petition was erroneous because his claim for relief was based upon the United States Supreme Court's decision in Padilla v. Kentucky, 130 S. Ct. 1473 (2010), which he asserts recognized a constitutional right that did not exist when he pled guilty. The State responds that the constitutional right at issue in Padilla – ineffective assistance of counsel – was fully recognized when the Petitioner pled guilty in 1997; thus, the Supreme Court's decision in Padilla should not retroactively apply to the Petitioner's case, thereby rendering the petition untimely.

Tennessee's Post-Conviction Procedure Act provides that a claim for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred." Tenn. Code Ann. § 40-30-102(a). A trial court must dismiss any petition not filed within the limitations period. Tenn. Code Ann. § 40-30-106(b). "As a general rule, a trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed." State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996) (citing Tenn. R. App. 4(a) and (c)). In this case, the Petitioner did not appeal the judgments entered on May 2, 1997; thus, these judgments became final thirty days later, on June 1, 1997. The Petitioner acknowledges that the April 23, 2010 petition was filed beyond the expiration of the one-year limitations period but alleges that the statute of limitations should be tolled.

---

[1] Pursuant to Tennessee Rule of Appellate Procedure 4(a), a notice of appeal "shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from[.]"

The Post-Conviction Procedure Act provides that a petition may be filed beyond the expiration of the one-year limitations period if

> (1) The claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The petition must be filed within one (1) year of the ruling of the highest state appellate court or the United States [S]upreme [C]ourt establishing a constitutional right that was not recognized as existing at the time of trial[.]

Tenn. Code Ann. § 40-30-102(b)(1). Statutory tolling may also apply if the claim is based on new scientific evidence or seeks relief from a sentence that was enhanced because of a previous conviction that was later held to be invalid. Tenn. Code Ann. § 40-30-102(b)(2)-(3). In addition to the statutory exceptions, the one-year limitations period may be tolled based on due process concerns, which dictate that strict application of the statute of limitations may not deny a petitioner a reasonable opportunity to assert a claim in a meaningful time and manner when the failure to file in a timely manner is due to circumstances beyond a petitioner's control. State v. McKnight, 51 S.W.3d 559, 563 (Tenn. 2001); Williams v. State, 44 S.W.3d 464 (Tenn. 2001); Seals v. State, 23 S.W.3d 272 (Tenn. 2000); Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995); Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992).

The Supreme Court's decision in Padilla was filed on March 31, 2010. The petition for post-conviction relief in this case was filed on April 23, 2010, within one year of the Padilla decision. Thus, at issue here is whether the Supreme Court's decision in Padilla established a new rule of constitutional law that did not exist at the time the Petitioner pled guilty and whether that right should be retroactively applied to the Petitioner's case, which is under collateral review. See Teague v. Lane, 489 U.S. 288 (1989).

In determining whether Padilla announced a new rule of law, we note that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or Federal Government." Teague, 489 U.S. at 301. Thus, if a "result was not dictated by precedent existing at the time the defendant's conviction became final," then a new rule of law has been established. Id. While "[t]he explicit overruling of an earlier holding no doubt creates a new rule; it is more difficult, however, to determine whether [a new rule has been established] when a decision extends the reasoning of [] prior cases." Saffle v. Parks, 494 U.S. 484, 488 (1990). Thus, in determining whether Padilla has established a new rule, we must determine whether a court considering the Petitioner's claim prior to the holding in Padilla would have felt compelled to conclude that trial counsel was deficient for failing to advise the Petitioner regarding the deportation consequences of his guilty plea. Id.; see also

-3-

Beard v. Banks, 542 U.S. 406, 411 (2004) (stating that in determining whether a new rule of law has been established, the court must "ask whether the Constitution, as interpreted by the precedent then existing, compels the rule").

In 2004, this court held that deportation was a collateral consequence of a guilty plea and that trial counsel was not deficient for failing to inform the petitioner of such a collateral consequence. Bautista v. State, 160 S.W.3d 917, 921-22 (Tenn. Crim. App. 2004). In so concluding, this court considered similar cases in which courts held that failing to advise a petitioner of the deportation consequences of a guilty plea was not deficient. Id. at 921 (citing People v. Huante, 571 N.E.2d 736 (Ill. 1991)). This court also considered cases in which courts held that erroneously advising a petitioner of the deportation consequences of a guilty plea was deficient. Id. (citing People v. Correa, 485 N.E.2d 307 (Ill. 1985)). However, prior to Padilla, the United States Supreme Court had not considered this issue.

In Padilla, the Supreme Court concluded that deportation resulting from a petitioner's guilty plea was neither a direct nor a collateral consequence of pleading guilty. Padilla, 130 S. Ct. at 1482. Instead, the Court held that the "collateral versus the direct distinction [was] ill-suited to evaluating a [Strickland v. Washington, 466 U.S. 668 (1984)] claim concerning the specific risk of deportation." Id. The Court ultimately held that "counsel must inform [their] client whether [a] plea carries a risk of deportation" and that failure to advise their client of such a consequence was deficient. Id. at 1486. The ruling was not limited to requiring counsel to refrain from offering affirmative misadvice on the issue but established that when the deportation consequence is not "succinct and straightforward," counsel must still advise the client that "pending criminal charges may carry a risk of adverse immigration consequences." Id. at 1483.

The State argues that Padilla merely extended the rule announced in Strickland and urges us to follow the analysis in United States v. Ayed Shafeek, No. 05-81129, 2010 WL 3789747 (E.D. Mich. Sept. 22, 2010). In Strickland, the Supreme Court established the proper standard for determining whether a defendant has received the reasonably effective assistance of counsel. Strickland, 466 U.S. at 686-89. (stating that to establish a claim of ineffective assistance of counsel, a defendant must show that "counsel's performance was deficient" and that the "deficient performance prejudiced the defense"). In Shafeek, the court stated that given the Supreme Court's reliance on the prevailing professional norms in the Padilla decision, "it appears that the rule announced [in Padilla] is not a 'new rule' regarding a defense counsel's duty to, at a minimum, advise a client of a risk of adverse immigration consequences." Shafeek, 2010 WL 3789747, at *3. The court further concluded that even if Padilla had established a new rule of law, the case should not be retroactively applied given the considerations enunciated in Teague. Id.

Following our review, we conclude that Padilla established a new rule of law. In so concluding, we are guided by the Supreme Court's decisions in O'Dell v. Netherland, 521 U.S. 151 (1997), and Sawyer v. Smith, 497 U.S. 227 (1990). In O'Dell, the Supreme Court concluded that while Simmons v. South Carolina, 512 U.S. 154, 164 (1994) had established a new rule of law, the rule should not be retroactively applied. O'Dell, 521 U.S. at 167-68. In Simmons, the Court concluded that the trial court's refusal to instruct the jury that the defendant would not be eligible for parole if he were given a life sentence violated the Fourteenth Amendment. 512 U.S. at 164. The Supreme Court stated, "The trial court's refusal to apprise the jury of information so crucial to its sentencing determination, particularly when the prosecution alluded to the defendant's future dangerousness in its argument to the jury, cannot be reconciled with our well-established precedents interpreting the Due Process Clause." Id. In determining whether Simmons had established a new rule of law, the Supreme Court assessed the "legal landscape existing at the time [the] petitioner's conviction and sentence became final" and ultimately stated "that a reasonable jurist in 1988 would not have felt compelled to adopt the rule later set out in Simmons." O'Dell, 521 U.S. at 160-64. The Supreme Court stated, "The array of views expressed in Simmons itself suggests that the rule announced there was, in light of this Court's precedent, 'susceptible to debate among reasonable minds.'" Id. at 159-60 (quoting Butler v. McKellar, 494 U.S. 407, 415 (1990)).

In Sawyer, the Supreme Court held that while Caldwell v. Mississippi, 472 U.S. 320 (1985) had established a new rule of law, the rule should not be retroactively applied. Sawyer, 497 U.S. at 241-45. In Caldwell, the Court concluded that the Eighth Amendment precluded the State from informing the jury that the decision as to whether a defendant should receive the death penalty would be automatically reviewed by the state supreme court. 472 U.S. at 328-29. In concluding that the decision in Caldwell had produced a new rule of law, the Court stated, "It is beyond question that no case prior to Caldwell invalidated a prosecutorial argument as impermissible under the Eighth Amendment." Sawyer, 497 U.S. at 236. The Court acknowledged that state courts may have considered similar issues but concluded that a state court's "conscientious exercise of their powers of supervision and review could not dictate Caldwell as a principle of federal law under the Eighth Amendment." Id. at 241.

In Padilla, the Supreme Court concluded that the direct versus collateral distinction was inapplicable given the "unique nature of deportation" and that counsel's failure to advise a defendant of the deportation consequences of pleading guilty was deficient. Padilla, 130 S. Ct. at 1481. While the Court had not addressed this issue prior to Padilla, several states had discussed whether counsel's failure to advise or erroneously advising a defendant of the deportation consequences of their guilty plea amounted to deficient performance. See Bautista, 160 S.W.3d at 921-22. These states came to conflicting conclusions. Id.

Additionally, these states focused on a determination of whether deportation was either a direct or collateral consequence of pleading guilty. Id. Thus, the Supreme Court's decision in Padilla abrogated several state court decisions. See Oyekoya v. State, 558 So. 2d 990 (Ala. Crim. App. 2010); State v. Rosas, 904 P.2d 1245 (Ariz. Ct. App. 1995); Commonwealth v. Fuartado, 170 S.W.3d 384 (Ky. 2005); State v. Montalban, 810 So. 2d 1106 (La. 2002); Commonwealth v. Frometa, 555 A.2d 92 (Pa. 1989). The Supreme Court's decision also abrogated several federal court decisions. See Broomes v. Ashcroft, 358 F.3d 1251 (10th Cir. 2004); United States v. Gonzalez, 202 F.3d 20 (1st Cir. 2000); United States v. Del Rosario, 902 F.2d 55 (D.C. Cir. 1990); United States v. Yearwood, 863 F.2d 6 (4th Cir. 1988); United States v. Campbell, 778 F.2d 764 (11th Cir. 1985).

While we acknowledge that the Supreme Court's decision in Padilla analyzed Strickland, the Court placed an affirmative duty on counsel to inform their client of the deportation consequences of pleading guilty. Id. at 1486. Given the legal landscape of the opinions decided before Padilla, such a rule was, at the very least, "susceptible to debate among reasonable minds" when the Petitioner pled guilty. See Butler, 494 U.S. at 415. Indeed, similar to the conflicting opinions filed in Simmons, four of the Supreme Court justices in Padilla believed that such a rigid requirement was not mandated by Strickland. See Padilla, 130 S. Ct. at 1491-97 (Alito, J., concurring) ("[T]he Court's decision marks a major upheaval in Sixth Amendment law."). Following our review, we conclude that the requirement established in Padilla was a new rule of law that was not dictated by prior case law and was not a simple extension of Strickland.

However, retroactive application of the rule announced in Padilla is not warranted. Such a rule would only retroactively apply to cases on collateral review when either (1) the rule placed conduct beyond the power of the criminal law-making authority or (2) the rule established a watershed rule of criminal procedure that implicated the fundamental fairness of the trial. Teague, 489 U.S. at 311. Requiring counsel to advise a petitioner about the deportation consequences of pleading guilty does not implicate either exception.

First, the rule does not exempt those subject to deportation from the criminal law-making authority. Second, the rule was not a watershed rule of criminal procedure essential to the fairness of a proceeding. Cf. Gideon v. Wainwright, 372 U.S. 335 (1963) (establishing the right to counsel in felony criminal proceedings). At issue in Padilla was whether the petitioner had received the effective assistance of counsel in determining whether he should plead guilty. The Supreme Court held that counsel must inform their clients of the deportation consequences of pleading guilty. While this established a new requirement for counsel to comply with, it did not establish a right for defendants like the right established in Gideon, the right to counsel. Moreover, the rule did not relate to the overall fairness of

the proceeding itself. Although the Court's decision in <u>Padilla</u> established a new rule of law, the rule of law should not be retroactively applied.

However, we conclude that the trial court erred in summarily dismissing the petition for post-conviction relief without holding an evidentiary hearing. Given the Supreme Court's decision in <u>Padilla</u>, there was an issue as to whether the Petitioner's claim established a sufficient reason for tolling of the time for the filing of the petition. Following our review, we believe that remand is unnecessary in this case given our ultimate conclusion that <u>Padilla</u> should not retroactively apply to the Petitioner's case. Accordingly, we also conclude that the Petitioner's claim was untimely and that statutory tolling of the time for the filing of the petition is not warranted.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE