IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 19, 2012 Session

## RICARDO RODRIGUEZ v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2002-B-1129     Seth Norman, Judge**

**No. M2011-02068-CCA-R3-PC - Filed September 27, 2012**

The petitioner, Ricardo Rodriguez, brings a post-conviction challenge to his 2004 guilty plea for sale of a controlled substance based on the United States Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473, 1483 (2010), in which the Court concluded that trial counsel's failure to advise a defendant that his guilty plea would result in deportation amounted to deficient representation. In this case, the post-conviction petition was not filed within the one-year limitations period specified by the Tennessee Post-Conviction Procedure Act, and it was dismissed by the post-conviction court based on the statute of limitations at Tennessee Code Annotated § 40-30-102(a). The petitioner contends that *Padilla* should be retroactively applied and that his claim falls into an exception to the statute of limitations for new constitutional rules with retrospective application. *See* T.C.A. § 40-30-102(b)(1) (2006). Alternatively, the petitioner claims that due process tolls the statute of limitations or that the rule is an old rule with retroactive application. The petitioner also challenges the knowing and voluntary nature of his plea and brings a habeas corpus challenge based on his incomplete knowledge of English. We conclude that, because *Padilla* does not warrant retroactive application and because due process does not require the statute of limitations to be tolled, the petition was time-barred. We further conclude that the post-conviction court properly denied relief on the petitioner's remaining claims and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Sean Lewis and Patrick G. Frogge, Nashville, Tennessee, for the appellant, Ricardo Rodriguez.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Renee Erb, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural History**

The petitioner's post-conviction appeal stems from his April 28, 2004 guilty plea to sale of a controlled substance in violation of Tennessee Code Annotated section 39-17-417, a Class B felony. The petitioner asserts that his trial attorneys knew that he was not a United States citizen and that they nevertheless advised him to plead guilty without informing him of the potential adverse immigration consequences of his plea, despite readily available information showing that such a conviction would result in automatic deportation. One of his trial lawyers submitted an affidavit attached to a supplement to the petition, confirming that trial counsel did not discuss any immigration consequences with the petitioner. At the time the petitioner entered his guilty plea, the trial court asked him if he was suffering from any mental illness. Because of his imperfect understanding of the English language, the petitioner responded that he was, although he suffered from no mental illness at the time. Approximately two months later, at his sentencing hearing, the petitioner's counsel asserted he did not need a translator; however, the trial court determined during cross-examination that he was in need of a translator. He was sentenced to eight years on community corrections and was required to serve twenty-six weekends in prison.

The petitioner, a legal resident of the United States, left the country to visit relatives in Cuba on October 11, 2010, and was detained by immigration officials on November 23, 2010, when he was served notice that deportation proceedings were being commenced against him. This was when he discovered the adverse immigration consequences of his plea. The petitioner asserts that, had his counsel informed him of these consequences, he would not have pled guilty. In support of this, he includes with his petition various sources citing human rights violations in Cuba and asserts that, as an opponent to the current regime, he would be subject to such abuses. On March 30, 2011, the petitioner brought the instant petition. He contends that he is entitled to relief based on the ineffective assistance of his counsel and asserts that the statute of limitations should be tolled both under statute and based on due process. The petitioner further asserts that his plea was neither knowing nor voluntary because of his counsel's deficiency and because he did not understand the judge at his plea hearing due to his imperfect English. Alternatively, he requests that his petition be treated as a petition for a writ of error coram nobis or habeas corpus. The post-conviction court denied relief, finding that the action was time-barred. The post-conviction court also

concluded that no habeas corpus relief was warranted because the judgment was not void on its face and that the coram nobis action would not lie.

The petitioner appeals the denial of his post-conviction petition, asserting that he is entitled to relief because: (1) *Padilla* created a new rule of constitutional law which applies retroactively as a matter of state and not federal law, and his post-conviction claim is, therefore, not barred by the statute of limitations; (2) alternatively, *Padilla* did not announce a new rule for the purposes of *Teague v. Lane*, 489 U.S. 288 (1989) and, therefore, the rule applies retroactively; (3) due process requires the statute of limitations to be tolled based on counsel's alleged deficiency; (4) his plea was not knowing or voluntary due to his inability to comprehend the proceedings, which were conducted in English; and (5) he is entitled to habeas corpus relief based on his inability to comprehend the proceedings. The State responds that *Padilla* announced a new rule of constitutional law that does not apply retroactively and that due process does not require tolling the statute of limitations because his claims are not "later-arising." The State also asserts that his claims related to his inability to understand English are time-barred under the post-conviction statutes and not appropriate for habeas corpus relief.

## I. Post-Conviction *Padilla* Claim

### A. Timely Filing Under the Statutory Exception

A post-conviction petition must be brought within one year of the date of the final action of the appellate court (if an appeal is taken) or within one year of the date the judgment becomes final, and failure to file within the limitations period bars relief and removes the case from the court's jurisdiction. T.C.A. § 40-30-102(a). However, the statute allows the filing of a petition that would otherwise be time-barred when, as pertinent here:

> The claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The petition must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial[.]

T.C.A. § 40-30-102(b)(1). The petition was filed within one year of the United States Supreme Court's decision in *Padilla*; accordingly, the statute of limitations does not bar relief if *Padilla* established a new constitutional right and if retroactive application is

required. We note that the issue we must decide is currently before United States Supreme Court. *See Chaidez v. United States*, 655 F.3d 684 (7th Cir. 2011), *cert. granted*, *Chaidez v. United States*, 132 S. Ct. 2101 (2012) (No. 11-820).

## 1. Retroactivity Under *Teague*

In Tennessee, prior to the *Padilla* decision, *Bautista v. State*, 160 S.W.3d 917 (Tenn. Crim. App. 2004) governed a claim of ineffective assistance of counsel based on counsel's failure to advise the defendant of deportation consequences of a plea. In *Bautista*, this court concluded that deportation was a collateral consequence of a guilty plea and that counsel's failure to advise a defendant regarding such a collateral consequence did not constitute ineffective assistance of counsel. *Id.* at 922.

In *Padilla*, however, noting that it had never applied a distinction between direct and collateral consequences when determining constitutionally effective representation, the United States Supreme Court concluded that deportation, which was "intimately related" to criminal proceedings, was uniquely difficult to classify and that the distinction did not apply. *Padilla*, 130 S. Ct. at 1481-82. The Court concluded that counsel had a duty to advise the defendant of possible deportation where the consequence was "truly clear" and that counsel had a duty to advise the defendant that the charges may carry adverse immigration consequences when the law was "not succinct and straightforward." *Id.* at 1483.

The *Padilla* Court confronted concerns that the decision would result in a flood of litigation by noting the difficulty of proving both deficiency and prejudice under *Strickland*. *Id*. at 1485. The Court recalled that it had confronted similar concerns in *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985) (holding that *Strickland* applied to a challenge to a guilty plea based on ineffective assistance of counsel), but "[a] flood did not follow in that decision's wake." *Padilla* at 1484-85. The Court further asserted that relief would require "a petitioner [to] convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id*. at 1485.

We initially examine whether an appellate court decision announces a new rule of law under the principles laid out in *Teague*. *See Van Tran v. State*, 66 S.W.3d 790, 810-11 (Tenn. 2001). Under *Teague*, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301. An alternative formulation is that a rule is new "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* A new rule will be applied retroactively if "it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Id*. at 311 (quoting *Mackey v. United States*, 401 U.S. 667, 692 (1971)). The new rule may also be applied

retroactively if it is a watershed rule of criminal procedure, and it requires the observance of procedures that are "implicit in the concept of ordered liberty." *Id.* (quoting *Mackey*, 401 U.S. at 693). *Teague* quoted *Mackey* for the proposition that typically, a proceeding free from constitutional error at the time it becomes final is fundamentally fair, but an occasional altering of the understanding of necessary bedrock procedural elements will render a conviction unfair. *Id.* In deciding whether a rule is "new," *Teague* requires a court to first determine the date the defendant's conviction became final, and then analyze whether a court would have felt compelled under existing precedent to recognize the constitutional rule. *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997). If not, the rule is new and may only be applied retroactively under one of the circumstances mentioned above. *Id.* at 156-57.

The *Teague* standard for retroactivity is difficult to satisfy. *See Whorton v. Bockting*, 549 U.S. 406, 407 (2007) (noting that *Gideon v. Wainwright*, 372 U.S. 335 (1963) was the only case the Court had identified as a watershed rule meriting retroactive application). Although the *Padilla* opinion, in rejecting an argument that the floodgates of litigation would be opened, seems to anticipate some sort of retroactive application, we, nonetheless, conclude that, under *Teague*, retroactive application is not warranted. *See Chaidez*, 655 F.3d at 694 ("[W]e are hesitant to depart from our application of the test set forth in *Teague* and its progeny – which points clearly in the direction of new rule – based on inferences from indirect language."). While the rule was not, previous to the *Padilla* decision, dictated by precedent, *see Padilla*, 130 S. Ct. at 1491 (noting that "the Court's view has been rejected by every Federal Court of Appeals to have considered the issue thus far") (Alito, J., and Roberts, C.J., concurring), neither is it a watershed rule along the lines of *Gideon*.

Many appellate decisions in Tennessee which have examined the issue have concluded that *Padilla* announced a new rule which should not be applied retroactively under *Teague*. *See Lopez v. State*, No. M2011-02349-CCA-R3-PC, 2012 WL 2394148, at *2-3 (Tenn. Crim. App. June 26, 2012); *Cantu v. State*, No. M2011-02506-CCA-R3-PC, 2012 WL 2323243, at *2 (Tenn. Crim. App. June 18, 2012); *Guevara v. State*, No. W2011-00207-CCA-R3-PC, 2012 WL 938984, at *3 (Tenn. Crim. App. Mar. 13, 2012); *Stamegna v. State*, No. E2011-00107-CCA-R3-PC, 2011 WL 5971275, at *5 (Tenn. Crim. App. Nov. 29, 2011); *Diotis v. State*, No. W2011-00816-CCA-R3-PC, 2011 WL 5829580, at *2-3 (Tenn. Crim. App. Nov. 17, 2011).

We adhere to the prior decisions of this Court finding that, under *Teague*, *Padilla* established a new rule that neither placed conduct beyond the power of the criminal law-making authority nor announced a watershed rule of criminal procedure that implicated the fundamental fairness of the trial. *E.g., Guevara v. State*, 2012 WL 938984, at *3; *see also, e.g.*, *United States v. Amer*, 681 F.3d 211, 214 (5th Cir. 2012); *United States v. Mathur*, No. 11-6747, 2012 WL 2819603, at *4 (4th Cir. July 11, 2012); *Figuereo-Sanchez v. United*

*States*, 678 F.3d 1203 (11th Cir. 2012) (assuming that *Padilla* announced a new rule and concluding it was not a watershed rule warranting retroactivity)*; United States v. Chang Hong*, 671 F.3d 1147, 1159 (10th Cir. 2011); *Chaidez*, 655 F.3d at 694 (concluding *Padilla* announced a new rule). *But see United States v. Orocio*, 645 F.3d 630, 641 (3d Cir. 2011) (finding that *Padilla* announced an old rule under *Teague*).

## 2. Retroactivity Under State Law

Although we conclude that *Padilla* does not apply retroactively under *Teague*, the petitioner correctly states that states are not bound by the retroactivity analysis of *Teague*. *See Danforth v. Minnesota*, 552 U.S. 264, 282 (2008) (holding that *Teague* "does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed 'nonretroactive' under *Teague*"). While we have concluded that *Padilla* does not require retroactive application under federal constitutional law, the state of Tennessee is free to give the new rule broader retroactive application.

Tennessee Code Annotated section 40-30-122 provides:

> For purposes of this part, a new rule of constitutional criminal law is announced if the result is not dictated by precedent existing at the time the petitioner's conviction became final and application of the rule was susceptible to debate among reasonable minds. A new rule of constitutional criminal law shall not be applied retroactively in a post-conviction proceeding unless the new rule places primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or requires the observance of fairness safeguards that are implicit in the concept of ordered liberty.

Under the statute, the rule announced is a new one "if the result is not dictated by precedent existing at the time the petitioner's conviction became final" and if "application of the rule was susceptible to debate among reasonable minds." T.C.A. § 40-30-122. Tennessee precedent prior to *Padilla*, in the form of *Bautista*, 160 S.W.3d at 922, in fact dictated the opposite result, and Tennessee was not alone in rejecting this claim. *See Padilla*, 130 S. Ct. at 1481 n.9. We conclude that the rule is new.

Retroactivity under the statutory analysis then requires that the new rule either "place[] primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or "require[] the observance of fairness safeguards that are implicit

in the concept of ordered liberty." T.C.A. § 40-30-122. The first avenue to retroactivity is essentially the same as the test elaborated in *Teague*, and the rule announced in *Padilla* does not warrant retroactive application under this analysis. The second avenue differs from *Teague* in that it does not explicitly require a "watershed rule"; however, like *Teague*, it implicates the "concept of ordered liberty" and fundamental fairness. The Tennessee Supreme Court has previously described the standard as "virtually identical" to the federal standard. *See State v. Gomez*, 163 S.W.3d 632, 651 n.16 (Tenn. 2005), *overruled on other grounds by Gomez v. Tennessee*, 549 U.S. 1190 (2007). We conclude that this standard is not so different from the standard in *Teague* as to warrant a different conclusion in this instance.

As noted above, appellate decisions in Tennessee which have examined the issue have concluded that *Padilla* announced a new rule which should not be applied retroactively. We are persuaded by the reasoning and uniformity of the Tennessee authority cited above, and we conclude that *Padilla* announced a new rule of constitutional law which should not be applied retroactively under either state or federal retroactivity analysis. We note that if we were to accept the petitioner's alternative argument that *Padilla* did not announce a new rule, there would be no statutory basis for tolling the statute of limitations because Tennessee Code Annotated section 40-30-102(b)(1) requires an appellate decision "establishing a constitutional right that was not recognized as existing at the time of trial," and his action would consequently be time-barred.

Although Tennessee Code Annotated section 40-30-122 outlines the retroactive application of a new rule to post-conviction proceedings, we have previously recognized that *Van Tran*, 66 S.W.3d at 811, analyzed retroactivity without relying on the statutory language. In *Bush v. State*, the court noted that "the standard utilized in *Van Tran* varies somewhat from the statutory language," and that the Tennessee Supreme Court used a common law analysis in determining whether to apply a rule retroactively under state law. *Bush v. State*, No. M2011-02133-CCA-R3-PC, 2012 WL 2308280, at *5, 7 (Tenn. Crim. App. June 15, 2012) (noting that "the *Van Tran* court did not explain its reliance on *Meadows*, a case that predates the relevant provision of the Act, as opposed to the relevant statutory language now set forth in section -122"). *Van Tran* announced a new rule of state constitutional law and relied on *Meadows v. State*, 849 S.W.2d 748, 755 (Tenn. 1993), for the standard of retroactivity on post-conviction review. *Meadows* predated *Danforth* and concluded that "states are bound by federal retroactivity analysis when a new federal rule is involved." *Id.* at 754. Nevertheless, because it appears that any variation from the statutory analysis under either *Van Tran* or *Meadows* only applies to a new rule of state constitutional law, we are not compelled to undertake the dual analysis of the Court in *Bush*. However, we note that the result would be the same under the common law analysis in *Van Tran*.

Regardless of whether the *Van Tran* analysis tracks the statutory language, the court there also examined whether the result was dictated by precedent at the time the defendant's conviction became final, *Van Tran*, 66 S.W.3d at 811, and, as we have noted above, *Padilla* created a new rule under this standard. According to *Van Tran*, "'a new state constitutional rule is to be retroactively applied to a claim for post-conviction relief if the new rule materially enhances the integrity and reliability of the fact finding process of the trial.'" *Id.* at 811 (quoting *Meadows*, 849 S.W.2d at 755). In *Bush v. State*, 2012 WL 2308280, at *8, this court held that "many factors enter into a defendant's choice to plead guilty." *Bush* examined the retroactivity of the rule announced in *Ward v. State*, 315 S.W.3d 461 (Tenn. 2010) that failure to inform a defendant pleading guilty to a sexual offense regarding the lifetime supervision requirement rendered the plea constitutionally infirm. Ultimately, *Bush* concluded that lifetime supervision was "not so onerous that a defendant's ignorance about it renders his plea at odds with fundamental fairness or seriously undercuts the integrity and reliability of the plea process." *Bush*, 2012 WL 2308280, at *8. Deportation, involving potentially permanent separation from loved ones and home, does not present such an easy case. Nevertheless, we are guided by *Bush* to conclude that the accuracy of the fact-finding process – in a guilty plea, typically the trial court's determination that there is a factual basis for the plea – is not implicated by the "defendant's knowledge, or lack thereof" regarding potential deportation consequences. *Id.*; *see also United States v. Mathur*, 685 F.3d 396, 400 (4th Cir. 2012) (finding that lack of awareness of potential deportation, while unjust, "nevertheless does not cast doubt on the verity of the defendant's admission of guilt or the propriety of the sentence imposed pursuant to the plea agreement").

## B. Due Process Tolling

In addition to the statutory exception, our courts have recognized that on occasion, due process requires that the statute of limitations be tolled. *Williams v. State*, 44 S.W.3d 464, 468 (Tenn. 2001); *Guevara v. State*, 2012 WL 938984, at *1 (Tenn. Crim. App. 2012). Inherent in due process is "'a reasonable opportunity to have the claimed issue heard and determined.'" *Sands v. State*, 903 S.W.2d 297, 300 (Tenn. 1995) (quoting *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992)). Accordingly, despite statutory language that "the statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity," due process may require tolling when circumstances beyond the petitioner's control preclude raising the post-conviction claims. T.C.A. § 40-30-102(a); *Williams*, 44 S.W.3d at 469. In evaluating whether due process should toll the statute of limitations on a post-conviction action,

> courts should utilize a three-step process: (1) determine when
> the limitations period would normally have begun to run; (2)

determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands*, 903 S.W.2d at 301. "To determine whether a petitioner was denied a reasonable opportunity to present a claim, a court must balance the liberty interest in collaterally attacking the constitutional violations occurring during the conviction process against the State's legitimate interest in preventing the litigation of stale and fraudulent claims." *Wright v. State*, 987 S.W.2d 26, 28 (Tenn. 1999).

In *Stamegna v. State*, 2011 WL 5971275, at *3, the petitioner argued that due process required tolling the statute of limitations on his claim that his counsel was ineffective in failing to advise him of the deportation consequences of the plea he had entered fourteen years before. This court analyzed his claim under *Sands* and determined that it was not later-arising. The court noted that "[t]he possibility of deportation existed at the time the Petitioner entered his plea, and the Petitioner had knowledge of this law due to the immigration hold placed on him while in federal custody." *Id.* at *6. Although the court mentioned the petitioner's knowledge of federal deportation law, it also asserted that "[m]erely discovering that a claim exists, or lacking the knowledge that there may be a claim, does not make the claim 'later-arising.'" *Id.* The court further concluded that the fact that the decision in *Padilla* was not issued until March 31, 2010 also did not make the claim "later-arising." *Id.*

*Stamegna* is not alone in concluding that "mere lack of knowledge that a claim exists does not toll the statute of limitations." *Jacobs v. State*, No. M2009-02265-CCA-R3-PC, 2010 WL 3582493, at *3 (Tenn. Crim. App. Sept. 15, 2010). We have approved the principle that "lack of knowledge of [a] ground for post-conviction relief [does] not toll the statute given the state's interests in preventing litigation of stale and fraudulent claims and in insuring administrative efficiency and economy." *Brown v. State*, 928 S.W.2d 453, 457 (Tenn. Crim. App. 1996). We have also previously "refuse[d] to engraft a discovery rule over the statute of limitations in post-conviction cases." *Passarella v. State*, 891 S.W.2d 619, 625 (Tenn. Crim. App. 1994), *superseded by statute as stated in State v. Newman*, No. 02C01-9707-CC00266, 1998 WL 104492, at *1 n.2 (Tenn. Crim. App. Mar. 11, 1998). This court came to a similar conclusion in *Hill v. State*, No. E2005-00968-CCA-R3-PC, 2006 WL 389667, at *4 (Tenn. Crim. App. Feb. 16, 2006), where the defendant alleged due process tolling based on his discovery that his conviction could enhance his federal sentence when it was applied to enhance the sentence.

The limitations period for the petitioner's claim began to run thirty days after the entry of his guilty plea in 2004. *See State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996). While the rule in *Padilla* had not yet been announced at the time that the statute of limitations ran on the petitioner's claim, nothing – including this court's decision in *Bautista* – prevented him from raising the issue and seeking relief from the United States Supreme Court as Mr. Padilla eventually did. *See State v. Gomez*, 163 S.W.3d 632, 650-651 (Tenn. 2005) (noting that the Tennessee Supreme Court was not the final arbiter of federal constitutional law and that a defendant who is dissatisfied with an unfavorable state decision has the option to file a federal appeal).[1] Although he was not aware of the deportation consequence of his conviction at the time his plea was entered, precedent dictates that the discovery rule does not apply to post-conviction claims, and we are constrained to conclude that his claim existed at the time of his guilty plea and is not later-arising. Accordingly, we do not proceed to step three of the *Sands* analysis. Therefore, the petitioner is not entitled to due process tolling of the statute of limitations.

## II. Post-Conviction Claim Based on Inability to Comprehend the Proceedings

Unlike his *Padilla* claim, the petitioner's claim that he is entitled to post-conviction relief due to the fact that his plea was not knowing and voluntary because of his inability to comprehend the language is not based on any purported change in constitutional law, and he alleges no basis for tolling the statute of limitations. In addition, a ground for relief is generally waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented. T.C.A. § 40-30-106(g). A post-conviction court is required to dismiss a petition "[i]f the facts alleged . . . fail to show that the claims for relief have not been waived or previously determined." T.C.A. § 40-30-106(f). We conclude that this claim is both untimely and waived.

## III. Habeas Corpus and Coram Nobis

The petitioner next asserts that he is entitled to habeas corpus relief based on the fact that he was unable to adequately comprehend the language of the proceedings of his guilty plea. Although the statutory language authorizing the writ of habeas corpus appears broad, '[h]abeas corpus under Tennessee law has always been, and remains, a very narrow procedure.'" *Archer v. State*, 851 S.W.2d 157, 162 (Tenn. 1993) (quoting *Luttrell v. State*, 644 S.W.2d 408, 409 (Tenn. Crim. App. 1982)). In order to prevail, the petitioner must

---

[1]*Bautista* was decided in September 2004, after the petitioner's April 2004 plea. However, even if his plea had been entered after *Bautista*, "criminal defendants routinely raise and preserve for federal review issues this Court has previously rejected." *Gomez*, 163 S.W.3d at 651.

demonstrate that the judgment is void rather than merely voidable. *Hogan v. Mills*, 168 S.W.3d 753, 755 (Tenn. 2005). "A void judgment is one in which the judgment is facially invalid because the court lacked jurisdiction or authority to render the judgment or because the defendant's sentence has expired." *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999). A voidable sentence, on the other hand "is valid on its face and requires evidence beyond the face of the record or judgment to demonstrate its invalidity." *Hogan*, 168 S.W.3d at 755. If the judgment is not void on its face, the trial court may dismiss it summarily. *Id.* In this case, the petitioner shows no reason that his judgment is facially void; to prevail, he would have to introduce evidence regarding his knowledge of the language. The post-conviction court did not err in dismissing this claim.

Although the petitioner raised a coram nobis claim in his post-conviction petition, neither of his briefs to this Court address the claim. Under Tennessee Court of Criminal Appeals Rule 10(b), claims not supported by argument, citations to authority, or references to the record are considered waived. Accordingly, we conclude the petitioner has abandoned this claim.

## CONCLUSION

Because *Padilla* does not warrant retroactive application and due process does not operate to toll the limitations period, the petitioner's claims related to his counsel's failure to advise him of the deportation consequences of his plea are time-barred, as is his post-conviction claim based on his inability to understand English. He is furthermore not entitled to habeas corpus relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE