(No. 60274.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CESAR CORREA, Appellee.

*Opinion filed September 20, 1985.—Rehearing denied December 2, 1985.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Michael E. Shabat, Joan S. Cherry, Timothy J. Joyce, and Thomas V. Gainer, Jr., Assistant State's Attorneys, of counsel), for the People.

Consuelo E. Bedoya, of Chicago (Dennis A. McKin-

ney, Jr., of counsel), for appellee.

JUSTICE RYAN delivered the opinion of the court:

Cesar Correa (herein referred to as defendant) was charged in three indictments in the circuit court of Cook County with three offenses of delivery of a controlled substance (less than 30 grams of cocaine). He entered pleas of guilty to the three charges on June 29, 1981, and was sentenced to three years in the penitentiary on each charge. The sentences were to run concurrently. No appeal was taken. He was released from the penitentiary on August 13, 1982. Shortly after his release he was taken into custody by the United States Immigration and Naturalization Service. He now contends that it was at this point that he first learned that his convictions were grounds for deportation. On December 27, 1982, he filed a petition in the circuit court of Cook County under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1981, ch. 38, par. 122–1 *et seq.*). He alleged that his guilty pleas were not voluntary and that he was denied effective assistance of counsel in that his attorney specifically misrepresented to him the effect of his guilty pleas upon his immigrant status. An evidentiary hearing was conducted, and the court vacated the convictions and sentences, set aside the guilty pleas, reinstated the three charges against the defendant, and set them for trial. The State appealed, and the appellate court affirmed the trial court (124 Ill. App. 3d 668). We granted the State's petition for leave to appeal (94 Ill. 2d. R. 604(a)(2)).

The State argues here, as it did in the trial court and the appellate court, that the defendant is not entitled to relief under the Post-Conviction Hearing Act because he was not, at the time the petition was filed, "imprisoned in the penitentiary" but had in fact served his sentence and had been released from the penitentiary. The Act provides:

"Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Illinois or both may institute a proceeding under this Article." (Ill. Rev. Stat. 1981, ch. 38, par. 122—1.)

The State acknowledges that there are cases in which the defendants were not incarcerated at the time relief was granted under the Act. However, the State argues that in those cases the defendant was incarcerated at the time that the petition under the Post-Conviction Hearing Act was filed. It is the State's position that those cases do not support the defendant in this case. (See *People v. Neber* (1968), 41 Ill. 2d 126; *People v. Davis* (1968), 39 Ill. 2d 325; *People v. Placek* (1976), 43 Ill. App. 3d 818; *People v. Smalley* (1975), 33 Ill. App. 3d 677; *People v. Bain* (1973), 10 Ill. App. 3d 363.) The State also acknowledges that the appellate court in *People v. Montes* (1980), 90 Ill. App. 3d 355, held that relief under the Act is available to a defendant convicted of a felony and sentenced to a term of probation and not imprisonment. The State argues that *Montes* is not supportive of the defendant because the filing of the petition for relief under the Act while the defendant is serving a sentence of probation cannot be equated with defendant's position in this case where he has served his sentence of imprisonment and has been released.

In *Young v. Ragen* (1948), 337 U.S. 235, 93 L. Ed. 1333, 69 S. Ct. 1073, the Supreme Court discussed the inadequacies of the statutory remedies for a defendant's constitutional issues in Illinois prior to the enactment of the Post-Conviction Hearing Act. The court held that prisoners must be given some clearly defined method by which they can raise claims of denial of Federal constitutional rights. In *People v. Dale* (1950), 406 Ill. 238, this court acknowledged that the legislature, by enacting the

Post-Conviction Hearing Act, had responded to that requirement. This court has held that the Act must be liberally construed to afford a convicted person an opportunity to present questions of deprivation of constitutional rights. (*People v. Pier* (1972), 51 Ill. 2d 96, 98.) In *People v. Loftus* (1948), 400 Ill. 432, this court discussed the limitations of the scope of remedies that were then provided: writ of error, *habeas corpus,* and *coram nobis.* It was a rigid application of these remedies that prompted the Supreme Court's holding in *Young v. Ragen,* which in turn prompted the enactment of the Post-Conviction Hearing Act. The interpretation of the Act which the State now urges would cause the remedy under that act to resemble the relief available through *habeas corpus.* (See *People v. Fisher* (1939), 372 Ill. 146, 149.) We cannot so limit the Act, but must construe it liberally to accomplish the purposes for which it was enacted.

In our case the defendant was serving a period of mandatory supervised release at the time the petition was filed. Such a term, by statutory provision, was a part of defendant's sentence. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(d).) The statute provided that the Department of Corrections shall "retain custody" of all persons placed on mandatory supervised release and "shall supervise" such persons during their release. (Ill. Rev. Stat. 1979, ch. 38, par. 1003—14—2(a).) Also, the released prisoner may be taken into custody for a violation of the conditions of his release. (Ill. Rev. Stat. 1979, ch. 38, par. 1003—14—2(c).) Thus at the time the defendant filed his petition for relief under the Act, he had not served his sentence and was still subject to being confined as a result of his conviction. In *People v. Dale* (1950), 406 Ill. 238, 246, this court stated that the remedy under the Act is not available to "persons who had served their sentences and who might wish to purge their records of past convictions." Also, in *People v.*

*Jack* (1981), 97 Ill. App. 3d 1082, the appellate court held that relief under the Act could not be extended to one who had completed his sentence of probation prior to filing his petition. In other words, the defendant in *Jack* did not seek relief under the act while under sentence. In our case, although the defendant was not imprisoned, he had not served his sentence at the time the petition was filed. Therefore, the reasoning of *Dale* and *Jack* does not apply. We need not here decide whether the relief under the Act would have been available had the defendant been released from mandatory supervised release prior to the filing of the petition. However, we hold that in this case defendant was entitled to seek relief under the Post-Conviction Hearing Act.

The second issue before this court is whether the defendant's pleas were rendered involuntary by alleged ineffective assistance of counsel. The trial court held that the defendant's pleas were not voluntary because he had been led to believe by his attorney that his guilty pleas would have no bearing on his status as an immigrant. At the evidentiary hearing on the post-conviction petition, defendant's trial counsel testified that he had negotiated with an assistant State's Attorney for the defendant's plea of guilty to the three charges and an agreement was reached that if the defendant pleaded guilty, the State would recommend that the defendant be sentenced to three years in the penitentiary. The defendant's attorney discussed the proposed agreement with the defendant. The defendant then asked his attorney what effect the guilty pleas would have on his status as an immigrant. The attorney testified that he told the defendant he "didn't know what Immigration would do in reference to his status. In my experience, I represent a lot of people who have been aliens, and none of them have been deported." The defendant then told his attorney that his wife is an American citizen. The attorney

testified that he then told the defendant, "If your wife is an American citizen, then a plea of guilty would not affect your status. You probably will be picking up her status as an American citizen." On cross-examination the attorney testified that when he learned that the defendant's wife is an American citizen, he told the defendant that "I don't think you have anything to worry about. Your record, you should get the benefit she is an American citizen. I don't think you will be deported." The attorney also testified that after he had talked to the State's witness, an informer who had purchased the drugs from defendant upon which the charges were based, he told the defendant that the State had a very good case. "If you go to trial, unless you have substantial evidence that is not in my file, I think you will be found guilty and you will get more time than three years." Following this conversation, defendant pleaded guilty to the three charges of delivery of less than 30 grams of a controlled substance. The State, as it had agreed to do, recommended a sentence of three years, which the court imposed. Prior to accepting the pleas, the court thoroughly admonished the defendant as to the consequences of his guilty pleas but did not address collateral consequences such as the effect of the pleas upon the defendant's status as an immigrant. (For a discussion of the collateral consequences of a felony conviction in Illinois, see Decker, *Collateral Consequences of a Felony Conviction in Illinois*, 56 Chi.-Kent L. Rev. 731 (1980).) The defendant does not contend that the judge was under an obligation to admonish him as to these collateral consequences of his pleas.

Although both the issues of an involuntary plea of guilty and ineffective assistance of counsel were addressed by the trial court and are discussed in the briefs in this court as separate issues, they are, under the facts of this case, closely interrelated. A defendant may enter

a plea of guilty because of some erroneous advice by his counsel; however, this fact alone does not destroy the voluntary nature of the plea. In *McMann v. Richardson,* the court stated:

"That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing. \*\*\*

In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea \*\*\*. Whether a plea of guilty is unintelligent and therefore vulnerable \*\*\* depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but whether that advice was within the range of competence demanded of attorneys in criminal cases." (*McMann v. Richardson* (1970), 397 U.S. 759, 770-71, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1448-49.)

It is therefore apparent that the resolution of the question of whether the defendant's pleas, made in reliance on counsel's advice, were voluntary and intelligently and knowingly made depends on whether the defendant had effective assistance of counsel. If the defendant's pleas were made in reasonable reliance upon the advice or representation of his attorney, which advice or representation demonstrated incompetence, then it can be said that the defendant's pleas were not voluntary; that is, there was not a knowing and intelligent waiver of the fundamental rights which a plea of guilty entails. In *Brady v. United States,* the court stated that the waiver of constitutional rights involved in a plea of guilty must not only be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences. *Brady v. United States* (1970), 397 U.S. 742, 748, 25 L. Ed. 2d 747, 756, 90 S. Ct. 1463, 1468-69.

The State, in arguing that the defendant's trial coun-

sel rendered effective assistance, urges that the defendant has not shown that his counsel was incompetent under the guidelines set out by the Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. *Strickland* was addressing the conduct of counsel rendered in the adversary setting of a trial. We are here concerned with advice rendered to the defendant in counsel's office, which advice was one of the factors underpinning defendant's decision to plead guilty. Therefore, some of the language of the guidelines set out in *Strickland* for determining the competence of counsel may not fit neatly into the contour of this case.

It is counsel's responsibility, and not the court's, to advise an accused of a collateral consequence of a plea of guilty; the consequence of deportation has been held to be collateral. (See *Fruchtman v. Kenton* (9th Cir. 1976), 531 F.2d 946; *Michel v. United States* (2d Cir. 1974), 507 F.2d 461; *Commonwealth v. Wellington* (1982), 305 Pa. Super. 24, 451 A.2d 223.) Our case is not one in which counsel simply failed to advise the defendant of the collateral consequence of deportation. In our case the defendant specifically asked counsel's advice on the question. The State argues that counsel did not advise defendant but equivocated, which should have prompted the defendant to inquire elsewhere. Although part of counsel's response to defendant's inquiry may have been equivocal, his statements after learning that the defendant's wife is an American citizen were positive and can only be interpreted as advice to the effect that the defendant's pleas would have no collateral deportation consequence.

Deportation, although collateral, is, nonetheless, a drastic consequence. (*Fong Haw Tan v. Phelan* (1948), 333 U.S. 6, 92 L. Ed. 2d 433, 68 S. Ct. 374.) In most cases this collateral consequence is more severe than the

penalty imposed by the court in response to the plea. In *United States v. Parrino* (2d Cir. 1954), 212 F.2d 919, the court held the fact that the defendant was not advised of the deportation consequence of his guilty plea did not make the plea subject to attack as being involuntary because such a consequence is only a collateral consequence. However, it has subsequently been held that it is doubtful that this decision now reflects the present attitude of the Federal judiciary. (*United States v. Briscoe* (D.C. Cir. 1970), 432 F.2d 1351.) *Briscoe* held that under appropriate circumstances the fact that a defendant has been misled as to the consequences of deportability may render his guilty plea subject to attack.

In *Commonwealth v. Wellington* (1982), 305 Pa. Super. 24, 451 A.2d 223, in a proceeding under the Pennsylvania post-conviction hearing act, the court held that the defendant's trial counsel was ineffective in failing to advise the defendant of the possibility of the consequence of deportation as a result of her guilty plea. In *People v. Wiedersperg* (1975), 44 Cal. App. 3d 550, 118 Cal. Rptr. 755, the court held that a petition for writ of error *coram nobis*, which alleged that the defendant's attorney did not know that defendant was an alien and did not inform him of the possible consequence of deportation before the defendant's plea of guilty, stated facts upon which the court could grant the relief sought. In *People v. Superior Court* (1974), 11 Cal. 3d 793, 523 P.2d 636, 114 Cal. Rptr. 596, the court held that the trial court had discretion to permit the defendant to withdraw his guilty plea when at the time the guilty plea was entered neither the defendant, his attorney, the prosecutor, nor the court was aware that deportation would be a collateral consequence of the plea.

We need not here consider the passive conduct of counsel in failing to discuss with a defendant the collateral consequences of a guilty plea, because in our case

we have unequivocal, erroneous, misleading representations that were made to defendant in response to his specific inquiry, the accuracy of which counsel could have ascertained before the pleas were entered.

Both this court and our appellate court have addressed the problem of misrepresentation by counsel which resulted in pleas of guilty. In *People v. Morreale* (1952), 412 Ill. 528, a young associate of defendant's counsel advised the defendant that if he pleaded guilty he probably would get probation. Defendant expressed doubts and was taken to his attorney in another courtroom, where his attorney told him not to "worry about anything; plead guilty and you will get probation." (*People v. Morreale* (1952), 412 Ill. 528, 530.) The defendant pleaded guilty and the court denied probation and sentenced him to the penitentiary. This court held that under the facts of that case, although the court had adequately admonished the defendant as to the consequences of his plea, the admonishment by the court did not have the effect of obliterating from his mind the previous misrepresentations made to him. In *People v. Owsley* (1978), 66 Ill. App. 3d 234, the trial court dismissed the defendant's petition for post-conviction relief without a hearing. The defendant had entered a plea of guilty to murder and was sentenced to from 14 to 20 years. In the petition for post-conviction relief the defendant alleged that prior to the entry of the plea, her attorney had misrepresented to her the minimum term she would have to serve to become eligible for parole, weekend furloughs, and work release. The defendant alleged that by reason of these misrepresentations her plea was not voluntary. The court held that a defendant ought not to be misled into entering a plea of guilty, and that it was important for the defendant to know when she would be eligible for parole and other freedom-related benefits before she could decide whether to plead guilty. The court held that an evidentiary hearing should have been held to

determine whether the defendant was, in fact, misled into pleading guilty. These cases may not be directly in point; however, they are strong indictions of a concern of the courts over the effect of erroneous and misleading advice of counsel on the decision of a defendant to enter a guilty plea.

We noted above that the Supreme Court, in *McMann v. Richardson,* held that whether a plea of guilty is unintelligent and vulnerable depends not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases. (*McMann v. Richardson* (1970), 397 U.S. 759, 770-71, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1448-49.) The advice counsel gave the defendant was erroneous and misleading and, under the facts of this case, was not within the range of competence required of counsel in such situations. It is obvious from the defendant's questions to his counsel that the effect of his pleas of guilty on his status as a immigrant was a prime factor in making his decision whether to plead guilty. The trial court, in the post-conviction hearing, concluded that in making his decision to forfeit his right to trial by jury and the other valuable rights which are waived by a plea of guilty, the defendant had relied on the erroneous advice of counsel that he would not be deported as a result of his pleas. Unless we find the determination of the trial court manifestly erroneous, which we do not, this finding must be upheld. *People v. Bracey* (1972), 51 Ill. 2d 514, 517; *People v. Burton* (1970), 46 Ill. 2d 135, 141.

In view of the erroneous and misleading advice on the crucial consequence of deportation, the defendant's pleas of guilty were not intelligently and knowingly made and therefore were not voluntary. We therefore affirm the judgment of the appellate court.

*Judgment affirmed.*