2019 IL App (1st) 180262-U

No. 1-18-0262

November 25, 2019

First Division

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 443 |
| | ) | |
| KAROL BYSTREK, | ) | Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Griffin and Justice Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*: When defense counsel correctly warned defendant that a guilty plea could affect his immigration status if he was not a citizen, the attorney's failure to research the issue further did not amount to ineffective assistance of counsel because defendant did not advise counsel he was not a United States citizen, even after the warning.

¶ 2    In his postconviction petition, Karol Bystrek alleged that his attorney provided ineffective assistance of counsel when he advised Bystrek to plead guilty to violating his probation. Bystrek

contends counsel should have told him the guilty plea would lead to deportation. The trial court denied the postconviction petition after an evidentiary hearing. Bystrek argues on appeal that the evidence showed he received ineffective assistance of counsel and that he did not voluntarily plead guilty to the charge of violating his probation. We hold that because Bystrek never informed counsel he was not an American citizen, even after counsel warned him that the guilty plea could affect his immigration status, Bystrek has not shown he received ineffective assistance of counsel, or that his guilty plea was involuntary. We affirm the trial court's judgment.

¶ 3                                      I. BACKGROUND

¶ 4     Police arrested Bystrek on December 21, 2014, charging him with theft of a wallet. On March 18, 2015, Bystrek, represented by a private attorney, agreed to plead guilty to the charge for a sentence of two years probation with intensive drug rehabilitation. The court gave the required warnings before accepting the guilty plea. The following exchange took place as part of those warnings:

> "THE COURT: Are you a citizen of the United States?
>
> DEFENDANT BYSTREK: Yes, sir.
>
> THE COURT: I believe you. But if you were not a citizen of the United States, a conviction for this offense could result in deportation, denial of naturalization or denial of readmission to the United States."

¶ 5     Bystrek's parents, in court, had a brief discussion with Bystrek's attorney, off the record, leading to the following:

> "THE COURT: *** Mr. Bystrek, do you recall that I asked you whether or not you were a citizen of the United States?

DEFENDANT BYSTREK: Yes. I got confused, sir. I'm sorry. I don't know what it was at that moment.

THE COURT: I understand. Did you understand everything else I discussed earlier?

DEFENDANT BYSTREK: Yes, I understand.

THE COURT: Are you a citizen of the United States?

DEFENDANT BYSTREK: No.

THE COURT: What country are you a citizen of?

DEFENDANT BYSTREK: Poland.

\*\*\*

THE COURT: You are here in the United States legally, correct?

DEFENDANT BYSTREK: Yes.

THE COURT: Do you understand though that a conviction for this offense could result in deportation. It could result in denial of naturalization if you're in the process of seeking to get naturalized. And it could subject you to denial of readmission into the United States should you leave the United States and seek to come back. Do you understand all of that?

DEFENDANT BYSTREK: Yes.

THE COURT: Understanding all of that, do you wish to maintain your plea of guilty or do you wish to withdraw your plea of guilty?

DEFENDANT BYSTREK: Maintain."

¶ 6        Bystrek did not do well in drug rehabilitation.  The State charged Bystrek with multiple violations of his probation.  He did not always report to probation, and some tests showed drug usage.

¶ 7        At the hearing on the charge of violating probation, held on June 3, 2016, Bystrek, now represented by public defenders, again agreed to plead guilty.  The court revoked Bystrek's probation and sentenced him to four years in the custody of the Illinois Department of Corrections (IDOC).  The court explained that if Bystrek wanted to appeal the judgment, he needed to file a motion to vacate the guilty plea.  The judge, the attorneys, and Bystrek did not mention on the record Bystrek's citizenship or the possible effect of his plea on his immigration status.

¶ 8        Bystrek returned to court on July 14, 2016.  His public defender explained:

"After [Bystrek] pled guilty [to violation of probation] and while he was in the custody of IDOC, he had written to the Court, a letter, asking to appeal. Appeal what? We're not quite sure. The family had also called the Public Defender's Office, relaying the same.

Because of that, I did file a motion to vacate the plea of guilty on his behalf, so it was done in a timely manner within the 30 days. We did ask for this court date to writ him in so we could talk to him about what he wanted to do.

I did explain to him that there's nothing to appeal since it was a plea; that he would have to vacate his plea, if your Honor granted that, at which time, then, we'd set this down for a hearing on the violation. I did explain all this to him. He

did relay in back that he wanted to actually withdraw his motion to vacate, but I will ask him on the record right now what it is that he'd like to do."

¶ 9     Bystrek told the court he sent the letter asking to appeal "[b]ecause [he] didn't know you can't go back on probation after you get sentenced." He said he did not understand that his guilty plea would end his probation and place him in the custody of IDOC. After consulting with the public defender, he agreed to withdraw his motion to withdraw his guilty plea.

¶ 10    On May 11, 2017, Bystrek, through a new private attorney, filed a "MOTION TO VACATE JUDGEMENTS OF MARCH 18, 2015, JUNE 3, 2016, & JULY 14, 2016." The parties and the court treated the motion as a postconviction petition. Bystrek alleged that the public defender provided ineffective assistance of counsel on June 3, 2016 and July 14, 2016, by failing to inform him that pleading guilty to violation of probation would lead to deportation. In the petition, Bystrek added, "[b]ecause [Bystrek] was never fully informed of his rights by either the Court or his attorney, and because he did not waive his protections knowingly, this was not a valid plea and in violation of due process."

¶ 11    The Immigration and Customs Enforcement Agency (ICE) took custody of Bystrek in June 2017 and started deportation proceedings. The court advanced the postconviction petition to the third stage of postconviction proceedings, holding an evidentiary hearing on Bystrek's allegation that he received ineffective assistance of counsel when he pled guilty to violation of probation.

¶ 12    Bystrek testified that his public defenders never asked him about citizenship or his immigration status. Bystrek told the attorneys he wanted to get back to probation. The public defenders advised him to accept the offer of four years because that option promised earliest

release.  Bystrek, who came to the United States at two years of age, admitted that he did not mention immigration or citizenship to his public defenders.

¶ 13    Bystrek testified that soon after he pled guilty to violating his probation, he learned that ICE had issued a warrant and intended to start deportation proceedings against him.  Bystrek sent the July 2016 letter to the court asking to appeal because of the threat of deportation.  He followed the advice of his public defenders at the hearing on July 14, 2016, when he withdrew the motion to withdraw his guilty plea.  If he had known that his guilty plea on June 3, 2016, would lead to deportation, he would not have pled guilty to the charge of violating his probation.  If he had known that withdrawing his guilty plea gave him his last chance to avoid deportation, he would not have withdrawn his motion to withdraw his guilty plea.

¶ 14    Dylan Barrett, one of the public defenders who represented Bystrek on June 3, 2016, and July 14, 2016, largely corroborated Bystrek's testimony.  Barrett testified that he gave Bystrek the warnings he usually gives his clients before a guilty plea.  Barrett testified, "I said to him a conviction in this matter may affect his immigration deportation status within this country."  Even after the express warning, Bystrek did not mention his citizenship, his immigration status, or the immigration warrant.  Barrett admitted that he did no further research on the effect the plea would have if Barrett lacked citizenship.

¶ 15    At the conclusion of the evidentiary hearing, Bystrek's private attorney told the court that the case had "become extremely time sensitive because the immigration appeals court dismissed our appeal." The court issued its ruling the following day.  The court noted that the violation of probation counted as an aggravated felony mandating deportation.  The court said:

"I find that Mr. Barrett had no reason to believe that [Bystrek] was not a US citizen. ***.

***

*** [Bystrek] was told three times, twice by Judge Joyce[] and once by Mr. Barrett[,] that these pleas could[] affect his immigration status. ***

*** [Bystrek] never said anything about immigration. Factually, had he said something about immigration at the time he made the motion to withdraw the plea of guilty, I would have let him do it. But he didn't. And I didn't know that he wasn't a citizen of the United States at the time. ***

***

*** I'd like to address *** whether Mr. Barrett's representation fell below a reasonable level, and *** I have to find that it did not in this situation. Had the defendant said, I'm not a US citizen, then I think Mr. Barrett would be obligated to look a little further into the situation ***. I think *** giving him a general statement that the plea may [a]ffect your immigration status is sufficient absent anything else. *** I think at some point the defendant has to *** give some indication his immigration status is an issue.

*** Mr. Barrett, with no indication [Bystrek] was not a US citizen told him there could be possible immigration consequences to his plea [to] violation of probation was giving him a reasonable level of representation. ***

*** [I]s this a knowingly and intelligently made plea of guilty? *** He was advised *** that there were possible immigration consequences, and he went

ahead anyway. And I understand that he was told, 'possible,' as opposed to 'certainly,' but *** he put himself in that position by not saying anything."

¶ 16    The court denied the postconviction petition. Bystrek now appeals.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, Bystrek argues that he received ineffective assistance of counsel from the public defenders who advised him to plead guilty to violating probation, and he did not plead guilty voluntarily. The State asks us to dismiss the appeal as moot.

¶ 19                                A. Mootness

¶ 20    In his brief on appeal, Bystrek states that immigration proceedings have concluded with his deportation to Poland. The State argues that the deportation makes the appeal moot.

¶ 21    In *Steele v. Blackman*, 236 F.3d 130 (3d Cir. 2001), the Immigration and Naturalization Service deported the petitioner because of his conviction for an aggravated felony. The court found that the deportation did not moot the appeal, as it held:

> "Erroneous conviction of an aggravated felony will have several continuing and serious legal consequences for Steele, including serving as a permanent bar preventing his return to the United States to visit his family. [Citation.] A determination that Steele's conviction did not constitute an aggravated felony would alleviate many of these collateral effects." *Steele*, 236 F.3d at 134 n.4; see also *Chong v. District Director, Immigration & Naturalization Service*, 264 F.3d 378, 385 (3rd Cir. 2001).

We find that the deportation does not moot the appeal.

¶ 22                               B.  Standard of Review

¶ 23    The trial court denied the postconviction petition after holding an evidentiary hearing at the third stage of postconviction proceedings.  *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006) states the standard of review:

> "When a petition is advanced to a third-stage, evidentiary hearing, where fact-finding and credibility determinations are involved, we will not reverse a circuit court's decision unless it is manifestly erroneous. [Citation.] If no such determinations are necessary at third stage, i.e., no new evidence is presented and the issues presented are pure questions of law, we will apply a *de novo* standard of review, unless the judge presiding over postconviction proceedings has some 'special expertise or familiarity' with the trial or sentencing of the defendant and that 'familiarity' has some bearing upon disposition of the postconviction petition."

In the case before us, new evidence was presented at the evidentiary hearing and the trial court was required to make credibility determinations.  Accordingly, the standard of review is whether the ruling was manifestly erroneous.  *People v.* Ortiz, 235 Ill. 2d 319, 333 (2009). The trial court's ruling is manifestly erroneous if it is arbitrary, unreasonable and not based on the evidence.  *People v. Wells*, 182 Ill. 2d 471, 481 (1998).

¶ 24                          C.  Ineffective Assistance of Counsel

¶ 25   Bystrek argues that his public defenders provided ineffective assistance by failing to inform him that his guilty plea would certainly lead to deportation.   To show ineffective assistance of counsel, "a defendant must show that his counsel's performance fell below an

objective standard of reasonableness and that 'but for counsel's incompetence, the defendant stood a reasonable chance of achieving a better result.' " *People v. Billups*, 2016 IL App (1st) 134006, ¶14 *quoting People v. Burnett*, 385 Ill. App. 3d 610, 614 (2008).

¶ 26    Bystrek relies on *Padilla v. Kentucky*, 559 U.S. 356 (2010), for his claim that counsel's advice fell below an objective standard of reasonableness. Padilla relied on the advice of counsel when he pled guilty to a criminal charge. His counsel falsely assured him that his conviction would not result in deportation. The *Padilla* court stated the general rule:

> "When the law is not succinct and straightforward ***, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." *Padilla*, 559 U.S. at 369.

¶ 27    Here, Barrett admitted that he did not research the possible deportation consequences of Bystrek's plea. When Barrett warned Bystrek that if Bystrek was not a citizen, the plea might affect his immigration status, Bystrek said nothing to indicate that his immigration status might make a difference. Bystrek, unlike Padilla, never told counsel that Bystrek was not a citizen. The deportation consequences here were not clear to Barrett because Barrett had no reason to think Bystrek might not be a citizen. The trial court found that the public defenders did not provide objectively unreasonable assistance when they warned Bystrek that if he was not a citizen, the plea could affect his immigration status, and Bystrek failed to inform them that he was not a citizen of the United States. The finding that counsel provided reasonable assistance is not contrary to the manifest weight of the evidence.

¶ 28                                            D.  Voluntariness

¶ 29    Finally, Bystrek argues that the evidence shows he did not voluntarily plead guilty to violating his probation, because he did not understand the consequences of his plea.  He contends that *People v. Correa*, 108 Ill. 2d 541 (1985), should control our resolution of the issue.  We agree.

¶ 30    Correa asked his attorney about the effect of a proposed guilty plea on his immigration status.  The *Correa* court recounted the evidence:

> "The attorney testified that he told the defendant he 'didn't know what Immigration would do in reference to his status. In my experience, I represent a lot of people who have been aliens, and none of them have been deported.' The defendant then told his attorney that his wife is an American citizen. The attorney testified that he then told the defendant, 'If your wife is an American citizen, then a plea of guilty would not affect your status. You probably will be picking up her status as an American citizen.' " *Correa*, 108 Ill. 2d at 547-48.

¶ 31    Correa pled guilty. "Prior to accepting the pleas, the court thoroughly admonished the defendant as to the consequences of his guilty pleas but did not address collateral consequences such as the effect of the pleas upon the defendant's status as an immigrant." *Correa*, 108 Ill. 2d at 548.

¶ 32    Bystrek, like Correa, concedes that the judge had no duty to advise him of the collateral consequences of his plea, even collateral consequences as serious as deportation.  See *People v. Delvillar*, 235 Ill. 2d 507, 521 (2009).  Bystrek, like Correa, contends that his ignorance of the effect of his plea on his immigration status renders his plea involuntary.  The *Correa* court said:

" '[A] defendant's plea of guilty based on reasonably competent advice is an intelligent plea * * *. Whether a plea of guilty is unintelligent and therefore vulnerable * * * depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but whether that advice was within the range of competence demanded of attorneys in criminal cases.' *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970).

It is therefore apparent that the resolution of the question of whether the defendant's pleas, made in reliance on counsel's advice, were voluntary and intelligently and knowingly made depends on whether the defendant had effective assistance of counsel. If the defendant's pleas were made in reasonable reliance upon the advice or representation of his attorney, which advice or representation demonstrated incompetence, then it can be said that the defendant's pleas were not voluntary; that is, there was not a knowing and intelligent waiver of the fundamental rights which a plea of guilty entails. ***

***

It is counsel's responsibility, and not the court's, to advise an accused of a collateral consequence of a plea of guilty; the consequence of deportation has been held to be collateral. [Citations.] *** [C]ounsel's *** statements after learning that the defendant's wife is an American citizen were positive and can only be interpreted as advice to the effect that the defendant's pleas would have no collateral deportation consequence." *Correa*, 108 Ill. 2d at 549-50.

¶ 33    Here, in contrast to *Correa*, the public defenders gave no incorrect advice.  Bystrek, unlike Correa, never informed his public defenders of his citizenship or immigration status, even when the public defenders specifically warned him that if he was not a citizen, the guilty plea might affect his immigration status.  Under the reasoning of *Correa*, the finding that Bystrek pled guilty voluntarily is not contrary to the manifest weight of the evidence.

¶ 34                                    III. CONCLUSION

¶ 35    Public defenders appropriately warned Bystrek that a guilty plea to the violation of probation charge might affect his immigration status.  They did not provide ineffective assistance of counsel when they did not further pursue the issue, as Bystrek said nothing to indicate that he was not a citizen.  Because Bystrek's public defenders warned him before he chose to plead guilty to violating his probation, the finding that he pled guilty voluntarily is not contrary to the manifest weight of the evidence.  Accordingly, we affirm the trial court's judgment.

¶ 36    Affirmed.