**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180253-U

Order filed March 2, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0253 Circuit No. 13-CF-894 |
| DARCY MORRIS, | ) ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CARTER delivered the judgment of the court.
Justices Holdridge and Wright concurred in the judgment.

_____

ORDER

¶ 1      Held:    Defendant was not denied his right to proceed *pro se* where his request to do so was not clear and unequivocal.

¶ 2      Pursuant to a fully negotiated plea agreement, defendant, Darcy Morris, was convicted of first-degree murder (720 ILCS 5/9-1(a)(3) (West 2012)) and sentenced to 25 years of imprisonment. Following the trial court's denial of defendant's motion to withdraw his guilty plea, defendant appealed. On appeal, defendant argues that he was denied his constitutional right to self-representation where the trial court erred by failing to admonish him of his right to self-

representation and erred by refusing to allow defendant to represent himself at trial after defendant requested to proceed *pro se*. We affirm the judgment of the trial court.

## I. BACKGROUND

On September 24, 2013, a Peoria County grand jury indicted defendant on two counts of first-degree murder (720 ILCS 5/9-1(a)(2), 9-1(a)(3) (West 2012)) and one count of mob action (720 ILCS 5/25-1(a)(1) (West 2012)). The factual basis indicated that during a fight involving many people, defendant struck the victim multiple times with a board and the victim died from his injuries "several months" later. *People v. Morris*, 2017 IL App (3d) 150251-U, ¶ 4.

### A. Motion filed on May 29, 2014

On May 29, 2014, defendant filed a *pro se* motion contending that his counsel was ineffective for failing to communicate and failing to conduct "any kind of investigation." Defendant requested "a continuance assignment of new counsel" and indicated that "if this is a problem for this court" he would invoke his right to proceed *pro se*. Defendant indicated that his counsel told defendant that he would not subpoena the victim's hospital and nursing home medical records or any of the victim's medical records. Defendant further indicated that the victim's records and doctors would be made available to him by way of subpoenas from new counsel or from him proceeding *pro se*. Defendant also indicated that "in the beginning" his attorney had told defendant that he could help defendant win his case by getting the murder charges dropped.

### B. Hearing on May 29, 2014

At a hearing on May 29, 2014, defendant's counsel informed the trial court that he and defendant had a disagreement as to trial strategy. Defendant wanted his attorney to request a continuance to subpoena additional records, and if defendant's attorney did not pursue the

defense of the victim's death having been the result of medical malpractice by the victim's treating doctors then defendant wished to proceed *pro se.* The trial court asked defendant, "[y]ou don't want to [go *pro se*], do you?" Defendant replied, "I would because I feel like if my lawyer can't help me out, I'm going to help myself out." Defendant stated that he was asking for his attorney's help in subpoenaing the victim's medical records pertaining to this case. Defendant indicated that he was given a letter indicating the victim may have "caused suicide" and asked if the victim had "caused suicide" why he should be accountable for the victim's actions.

¶ 9        In attempting to clarify defendant's comments, the trial court asked, "[s]o you think that you want your defense to be *** that his death wasn't the result of you, but some doctor intentionally harming him?" Defendant responded, "I don't consider that I cause his death." Defendant indicated that he was doing more than his attorney and stated, "I'm going to represent myself." The trial court indicated that defendant's attorney was "a fine lawyer" who would give defendant as much attention as anyone could, had not indicated that he was not willing to help defendant, and wanted to help defendant "on avenues" that defendant had available. Defendant indicated that his attorney had said that he would not subpoena any records when his attorney should be doing "whatever" defendant asked him to do.

¶ 10        The trial court suggested that defendant "as least listen" to what his counsel was saying to him and "maybe reach some middle ground," noting that defendant's plan of subpoenaing records and bringing in doctors to testify that they caused the victim's death was not how it was going to happen. Defendant indicated that he was trying to prove that he did not cause the victim's death and stated, "I want to work my case myself," noting he would rather "convict [him]self" than have the public defender who "ain't doing nothing for [him], convict [him] for no reason, or help get [him] convicted." Defendant stated that he was not saying that in fighting the

3

victim he did not do great bodily harm to the victim, but he was trying to get his attorney to understand that he did not commit murder. The trial court responded that everyone that goes to trial on a murder charge has that same position and "[t]hat is why we have trial because [the defendant] does not get to decide." The defendant stated, "[a]ll right, I want to go *pro se*" and indicated that he had filed a motion to proceed *pro se*.

¶ 11 The trial court stated, "I cannot imagine in your heart of hearts, you think it is going to go well if you're doing this by yourself." Defendant indicated that he "might as well" do it by himself. The trial court asked defendant's attorney to address defendant's contentions. Defendant's attorney indicated that he spent more than 100 hours on the case and requested that defendant allow him to stay on the case long enough to subpoena the records to see whether there was "a leg to stand on with this med malpractice defense."

¶ 12 The trial court indicated that he would not "fight with" defendant, noting that it was an unusual feature of defendant's case that the victim did not die from his injuries until two-and-a half months after the incident, but suggested that the case be continued until August to allow defendant's attorney to subpoena and review the victim's medical records. Defendant indicated that he had been talking to his attorney for 10 months and his attorney had not done anything and defendant was only asking him "to get the murder charged dropped." The trial court indicated, "we'll give you your court dates in August."

¶ 13 The prosecutor asked to confirm that defendant was agreeing to the continuance. The trial court informed defendant that he could have his trial date of June 9, 2014, and then asked if defendant wanted to follow through with subpoenaing the medical records. Defendant stated, "Right. That's all I'm asking him to do." The trial court clarified that obtaining the medical records would take some time. Defendant indicated, "I understand all that." The trial court

4

further clarified that it would take four to six weeks to gather the medical records, and defendant responded, "[h]owever long it takes." The trial court continued defendant's trial for a scheduling conference on July 31, 2014, and for trial on August 11, 2014, and told defendant that his attorney would get the medical records so defendant could review the records with his attorney and they could see if they could meet on "some middle ground." Defendant indicated, "I appreciate it. Thank you."

¶ 14                C. Defendant's Motions of June 2 and 26, 2014

¶ 15        On June 2, 2014, defendant filed the original copy of the same *pro se* motion that he had previously on May 29, 2014, in which he had requested "a continuance assignment of new counsel" and indicated that if "this" was a problem for the court he would invoke his right to proceed *pro se*.

¶ 16        On June 26, 2014, defendant filed an additional *pro se* motion indicating that he did not feel his attorney was putting forth the effort required to defend his case and, while he appreciated his attorney's review of the medical records, his attorney had failed to show defendant the discovery and was not prepared for the next court date of July 31, 2014. Defendant stated in the motion that he wanted to "alert" the court that "maybe it [was] time for [him] to consider *pro se* as an option with co-counsel to assist [him] with this case." Defendant referenced the fact that he had done most of the "evidence gathering," "took the lead to require all the medical records and necessary questions to be asked," and "requested an outside doctor to evaluate and give [them] a solid opinion on [the] medical records." Defendant stated that he was entitled to view the discovery and requested assistance "on this problem."

¶ 17                D. Motion to Continue by Defendant's Attorney

¶ 18    On July 18, 2014, defendant's attorney filed a motion to continue in light of the fact that he was still awaiting records that had been subpoenaed, the records were voluminous, and there was a possible need for an expert to review the records. At the scheduling conference on July 31, 2014, defendant's attorney indicated that he had just received 1050 pages of subpoenaed medical records from one of the victim's medical providers that day and would need time to review those records. He also informed the trial court that another attorney from the public defender's office would be assisting with the case but would be unable to be prepared for the trial on August 11, 2014. Defendant objected to his attorney's request for a new trial date and indicated, "I'm ready to go to trial." The trial court indicated that it was not unreasonable for defendant's attorney to request a continuance to review the subpoenaed materials. Defendant's attorney indicated he needed "[a]bout 30 days." Defendant stated, "no." The trial court continued the case for a scheduling conference on September 18, 2014, and for trial on September 29, 2014. Defendant requested to "say something," asked where he was in regard to his right to a speedy trial, and stated, "[a]s of right now I feel like I'm ready to go *pro se* and fight my case myself." The trial court stated, "[s]ee you on the court dates." The prosecutor stated, "Judge, I think that we do need to address that if he's—", and the trial court cut her off and again stated, "I'll see you on the court dates."

¶ 19                          E. Defendant's Motion filed on August 4, 2014

¶ 20    On August 4, 2014, defendant filed a motion "regarding [his] apology." In the "motion" defendant apologized for being disrespectful, explained that he had objected to the continuance after informing his attorney that he no longer wished to wait for the medical records, and indicated that he was appreciative of "a great hearing and the [time] frame granted by the court to prepare for trial."

6

¶ 21                              F. Hearing on August 8, 2014

¶ 22          At a hearing on August 8, 2014, the trial court acknowledged that "on several occasions"
defendant had indicated an objection to continuances, a request for a new lawyer, and a desire to
"do it himself." The trial court stated, "we really need to bring that to a head." Defendant's
attorney indicated that since the last court hearing he had visited defendant at the county jail and
believed that defendant wanted to proceed to trial with the representation of his two appointed
attorneys. Defendant indicated that he would first "like to apologize for the incident of being
disrespectful with the Court" at the last court hearing. Defendant also asked, "how do I go about
seeing if I can get a lesser offense on my verdict?"

          The trial court stated that it was not any "secret" that the trial court wanted defendant to
have "a competent lawyer and a capable lawyer" because the charge against defendant was
"about as serious as it gets," the trial court was afraid that in defendant's "passion or interest" to
make it known that he did not feel like he was guilty he was going to "assume these duties [him]
self, and it would not go so well," and the trial court thought defendant would be "more
comfortable along the way with counsel." The trial court explained that at the prior court
hearing, the trial court was not trying to cut defendant off but "wanted to give things a breather
and have [defendant] come back." The trial court asked defendant if appointed counsel would be
serving defendant's attorneys, and defendant responded, "[y]es." The trial court also indicated it
could not reduce the charges pending against defendant and set the trial for September 29, 2014.

¶ 23               G. Trial on September 30, 2014, and Defendant's Negotiated Plea

¶ 24          On September 29, 2014, the trial court continued defendant's trial to the following day.
On September 30, 2014, following jury selection, the trial court indicated that it had been
informed that a plea agreement had been reached. Defendant was advised by the trial court of the

7

minimum and maximum penalties for the offense to which he was pleading guilty. The trial court also admonished defendant that he had the right to a jury trial or bench trial, wherein the judge or jury would have to find him guilty beyond a reasonable doubt, and he had the right to confront and cross-examine witnesses that testified against him, to call witnesses on his behalf using subpoenas or other lawful methods, to testify if he wanted but he did not have to testify. The trial court asked defendant if he understood that those were some of the rights that defendant was giving up and waiving in exchange for the plea agreement. Defendant indicated that he understood that by pleading guilty he would be waiving those rights. Defendant additionally indicated that he had not been threatened or promised anything in exchange for his plea of guilty and that he was entering the guilty plea of his own free will. The trial court accepted defendant guilty plea. Under the plea agreement, the State dismissed one of the defendant's murder charges and the mob action charge and defendant pled guilty to felony first-degree murder (based upon the victim's death occurring in the course of a mob action) in exchange for a sentence of 25 years of imprisonment and 3 years of mandatory supervised release.

¶ 25                    H. Post-Plea Motions to Withdraw Guilty Plea and Proceedings

¶ 26        On October 2 and 3, 2014, defendant filed *pro se* motions to withdraw his guilty plea, in which he argued that his plea was not voluntary and his counsel was ineffective. Defendant stated:

> "This court can choose to ignore my rights which is clearly a violation,
> constitutional rights are a part of a judge's capacity, oath of office, a[nd] duty to
> enforce the established statutory laws and constitutional law."

¶ 27        Defendant's *pro se* motions were subsequently amended by his post-plea counsel on October 31, 2014. In the amended motion, defendant's attorney indicated that defendant was

8

requesting to withdraw his guilty plea on the basis of having felt compelled to plead guilty because the State intended to introduce excessively gruesome evidence at trial and on the basis that his defense counsel refused to present a viable defense by failing to subpoena certain witnesses to testify regarding the victim's medical care. On April 6, 2015, defendant's post-plea counsel filed a "supplement motion to withdraw guilty plea," incorporating defendant's previously-filed motions to withdraw his guilty plea and additionally contending that defendant's guilty plea was not made knowingly, intelligently, or voluntarily because defendant's counsel was ineffective "in that his attorney failed to advise [him] of all plea offers made by the State, failed to communicate [his] own plea offers to the State, and otherwise failed to keep the defendant apprised of all plea negotiations." The trial court denied defendant's motion to withdraw his guilty plea, and defendant appealed. On appeal, this court reversed and remanded "for new postplea proceedings."[1] *Id.* ¶ 15.

¶ 28        On remand, defendant was appointed new counsel, who filed a "third supplement motion to withdraw guilty plea" on behalf of defendant on February 8, 2018. In the motion, defendant indicated that the motion "incorporates by reference and argument all matters, arguments and factual bases set forth in the [prior] 3 motions," namely that defendant's plea of guilty was not made knowingly, intelligently and/or voluntarily because he "was denied effective assistance of trial/plea counsel in that his attorney failed to advise him of all offers made by the State and

---

[1] Defendant's post-plea counsel had filed a Rule 604(d) certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), indicating that he had consulted with defendant in-person to ascertain his contentions of error in the sentence and the entry of the plea of guilty, examined the trial court file and report of proceedings, and made any amendments to defendant's motion necessary for adequate presentation of any defects in those proceedings. *Id.* ¶ 7. On April 10, 2015, the trial court denied defendant's motion to withdraw guilty plea, and defendant appealed. *Id.* ¶ 8. On appeal, defendant contended that his attorney's Rule 604(d) certificate failed to strictly comply with the mandates of Rule 604(d), and this court reversed and remanded for new postplea proceedings, holding the certificate did not strictly comply with Rule 604(d). *Id.* ¶¶ 10-15.

failed to inform the State as to all counteroffers made by [defendant] and otherwise failed to keep [defendant] informed of all plea negotiations."

¶ 29     The trial court denied defendant's amended motion to withdraw guilty plea. Defendant appealed.

¶ 30                                        II. ANALYSIS

¶ 31     On appeal, defendant argues that he was denied his constitutional right to self-representation when the trial court refused his request to proceed *pro se* and failed to admonish him of his right to self-representation pursuant to Illinois Supreme Court Rule 401(a) (Ill. Sup. Ct. R. 401(a) (eff. July 1, 1984)). Defendant contends that at no time after he made any of his requests to proceed *pro se* did the court admonish him of his right to do so pursuant to Illinois Supreme Court Rule 401(a). Defendant argues that it was error for the trial court to fail to admonish him of his right to self-representation once he requested to proceed *pro se* and it was error for the trial court to deny him his right of self-representation. Defendant argues that he did not expressly waive his right to self-representation by pleading guilty. He additionally argues that he preserved for appellate review the issue regarding the denial of his constitutional right to self-representation by including it in his motion to withdraw his guilty plea. He also contends that the trial court's denial of his right to self-representation was plain error.

¶ 32     The State argues that by defendant entering a guilty plea he waived any alleged error regarding the denial of his right to self-representation because the right of self-representation exists "within the confines of the trial" and defendant's waiver of his rights related to trial included a waiver of his right to self-representation. The State additionally argues that a review of defendant's various motions to withdraw his guilty plea indicate that defendant did not raise

10

any issues pertaining to his right to self-representation or the lack of Rule 401 admonishments in the trial court, so that these issues have been forfeited for review on appeal.

¶ 33    We agree with the State that defendant waived the issues regarding the alleged erroneous denial of defendant's right to self-representation because he voluntarily relinquished the right to represent himself at trial when he entered his guilty plea. It is well-established that a knowing and voluntary guilty plea waives all non-jurisdictional errors, including constitutional errors. *People v. Townsell*, 209 Ill. 2d 543, 545 (2004).

> "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Generally, only where defendant's plea was made in reasonable reliance on the incompetent advice or representation of his attorney, "can be said that the defendant's pleas were not voluntary; that is, there was not a knowing and intelligent waiver of the fundamental rights which a plea of guilty entails." *People v. Correa*, 108 Ill.2d 541, 549 (1985).

¶ 34    In this case, even though defendant was represented by counsel at the time of his plea, he retained the right to make decisions involving fundamental rights, including the right to decide whether to plead guilty. See *People v. Pondexter*, 214 Ill. App. 2d 79, 87 (1991). Because defendant decided to plead guilty, any non-jurisdictional errors that occurred prior to that date were waived. See *Townsell*, 209 Ill. 2d at 545. Although defendant claims that the trial court's denial of his request to proceed *pro se* forced him to be represented by counsel who refused to

11

present his desired defense so that "he felt he had no choice but to plead guilty," the record does not indicate that defendant made any such clear and unequivocal request to proceed *pro* se (as is further discussed below).

¶ 35　　　　Additionally, the record does not support defendant's contention that he included the issues presented in this appeal in his motion to withdraw guilty plea. Therefore, issues raised in this appeal are forfeited as well. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (when a defendant fails to object to an error at trial and include the error in a posttrial motion, he forfeits ordinary appellate review of that error). Defendant argues, however, that the trial court's denial of his right to self-representation is a structural error that should be reviewed for plain error, regardless of the fact he entered a guilty plea waiving the issue.

¶ 36　　　　Under Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." The plain error rule allows review of a forfeited claim of error if the error is clear or obvious and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. McDonald*, 2016 IL 118882, ¶ 48. An error in denying a defendant the right to represent himself is a structural error that may be reviewed under the second prong of the plain error doctrine as it is "a systemic error that serves to erode the integrity of the judicial process and undermine the fairness of a trial." *People v. Washington*, 2012 IL 110283, ¶ 59.

¶ 37　　　　Here, even if we could review the forfeited claims under the second prong of plain error review—despite defendant's waiver of those issues by way of his decision to enter a guilty

12

plea—such a review is not applicable in this case because there was no error. See *People v. Johnson*, 218 Ill. 2d 125, 139 (2005) (the initial step in any plain error analysis is to establish that there was error in the first place). "A defendant has a constitutional right to represent himself." *People v. Baez*, 241 Ill. 2d 44, 115 (2011) (citing *Faretta v. California*, 422 U.S. 806, 835 (1975); *People v. Burton*, 184 Ill. 2d 1, 21 (1998)). A defendant's waiver of the right to counsel must be clear and unequivocal. *Id*. at 116. "In determining whether a defendant's statement is clear and unequivocal, a court must determine whether the defendant truly desires to represent himself and has definitively invoked his right of self-representation." *Id*. A court is required to indulge in every reasonable presumption against a waiver of the right to counsel. *Id*. "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances of that case, including the background, experience, and conduct of the accused." *Id*. In making this determination, "courts may look at the defendant's conduct following the defendant's request to represent himself." *Burton*, 184 Ill. 2d at 24. If a defendant's request to represent himself is freely, knowingly, and intelligently made, it must be accepted. *People v. Lego*, 168 Ill. 2d 561, 564 (1995).

¶ 38     The requirement that the waiver of the right to counsel be knowingly, intelligently, and voluntarily made "calls for nothing less than a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. Thus, a defendant must "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that" the defendant is aware of what he is doing and the " ' "choice is made with eyes open." ' " *Id*. (quoting *Faretta*, 422 U.S. at 835, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). Pursuant to Supreme Court Rule 401(a), "[a]ny waiver of counsel shall be in open court," and the trial court "shall not" permit a waiver of counsel by a person

13

accused of an offense punishable by imprisonment without first addressing the defendant personally in open court and informing him of and determining that he understands the following: (1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law; and (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court.

¶ 39     Here, there is no merit to defendant's arguments on appeal that the record shows that his request to proceed *pro se* was clear and unequivocal. In his initial motion, defendant indicated that he would invoke his right proceed *pro se* if he did not receive a continuance for the assignment of new counsel. At the next hearing, which was the first opportunity the trial court had to address defendant's concerns regarding his attorney and his desire to proceed *pro se* if he was not assigned new counsel, it became apparent that defendant the basis of defendant's request for new counsel stemmed from a disagreement he had with his current counsel regarding trial strategy, with defendant wanting his attorney to request a continuance to subpoena the victim's medical records. Defendant agreed to a continuance to allow his attorney time to do so. Thereafter, defendant filed the original copy of the motion he had previously filed (which the trial court had already addressed) and an additional motion indicating "maybe it [was] time for [him] to consider *pro se* as an option with co-counsel to assist [him]." At the hearing following the filing of those motions, defendant's attorney requested a continuance to review the subpoenaed records and to possibly consult an expert, and defendant objected to the continuance, indicating that he was ready for trial. There was, however, no clear and unequivocal request to proceed *pro se*, and at the next hearing, defendant confirmed that he wished to proceed with the representation of his two appointed attorneys.

14

¶ 40    Therefore, the record does not indicate that defendant truly desired to represent himself. See *Baez*, 241 Ill. 2d at 116. Based on this record, we conclude that there was no error by the trial court in not allowing defendant to waive counsel and proceed *pro se* where there was no clear and unequivocal request to do so made by defendant. Since there was no waiver of counsel by the defendant in this case, Rule 401(a) admonishment were not applicable. See Ill. S. Ct. R. 401(a) (eff. July 1, 1984). We, therefore, affirm the judgment of the trial court.

¶ 41                                III. CONCLUSION

¶ 42    The judgment of the circuit court of the Peoria County is affirmed.

¶ 43    Affirmed.